THE THIRD NATIONAL BANK OF SPRINGFIELD, MASSACHUSETTS, v. T. C. BOND.
No. 12,106. (67 Pac. 818.)

SYLLABUS BY THE COURT.

CHATTEL MORTGAGE— *Place of Filing — Construction of Statute.*
Where a mortgagor of personal property is a resident of this state, the mortgagee has the alternative of depositing his mortgage either in the office of the register of deeds in the county where the mortgaged property shall be situated or in the county of which the mortgagor shall at the time be a resident.

Error from Cloud district court; F. W. STURGES, judge. Opinion filed February 8, 1902. Reversed.

*Caldwell & Wilmoth,* for plaintiff in error.

*Theodore Laing,* and *John Kennish,* for defendant in error.

The opinion of the court was delivered by

GREENE, J. : The plaintiff in error brought replevin in the district court of Cloud county for the possession of sixty head of native Missouri yearling steers, or their value, seventeen dollars per head, and twenty-nine head of Kansas yearling steers, or their value, fifteen dollars per head. Judgment was rendered for the defendant in error. The plaintiff here alleges two causes of error : (1) That the verdict and judgment of the court below are not sustained by any evidence ; and (2) that the court erred in giving its fifth instruction.

It appears from the evidence that on August 5, 1898, J. E. Eversole, who at the time resided in Elk county, Kansas, executed to the Walker-Russell Commission Company, of Kansas City, Mo., his note for $4923.56, and secured it by a chattel mortgage on 74

head of native two-year old steers, 100 head of native yearling steers, 45 head of native yearling heifers, and 41 head of south Missouri yearling steers—260 head in all.   This note was transferred to plaintiff in error.

The cattle were described in the mortgage as being branded on the left hip with the letter "T," and kept in the "Means pasture," in Wilson county, Kansas. The mortgage was filed in the office of the register of deeds of Wilson county, the county in which the cattle were kept, but was not filed in Elk county, where the mortgagor at the time resided.

On January 2, 1898, Eversole shipped and consigned 143 head of cattle to Campbell, Hunt & Adams, commission merchants, at Kansas City, Mo., where they were sold on the market and the proceeds remitted to the First National Bank of Fredonia, Kan.   Campbell, Hunt & Adams received these cattle on July 3, 1899, and sold 104 head to Larimer & Co.

The defendant in error was in Kansas City at this time, and bought from Larimer & Co. eighty-nine head of cattle and shipped them to his home in Cloud county.   The cattle so purchased agree in price, weight and color with the Eversole cattle sold by Campbell, Hunt & Adams to Larimer & Co., and it is claimed by the plaintiff in error that these are part of the cattle mortgaged by J. E. Eversole to the Walker-Russell Commission Company.

In the spring of 1898, J. E. Eversole bought of Steven Elliott, of Bolivar, Mo., 127 head of cattle, and a short time thereafter mortgaged them to Elliott.   At the time they were mortgaged they were being kept in the Means pasture, in Wilson county, Kansas, and were branded with the letter "T" on the left hip. About the same time J. W. Eversole sold to J. E. Eversole twenty-nine head of cattle, but they were not

branded and there is no evidence that they were ever in the Means pasture.

The uncontradicted evidence is that sixty head of the cattle in controversy are the cattle sold by Steven Elliott to J. E. Eversole and are a part of the cattle mortgaged by J. E. Eversole to the Walker-Russell Commission Company, of Kansas City, Mo. As to the twenty-nine head sold by J. W. Eversole to his brother J. E. Eversole, there is no evidence that they were branded as described in the mortgage, nor that they were kept in the Means pasture at the time the mortgage was given.

If this mortgage is not wholly void as to innocent purchasers, the plaintiff should have recovered at least for the sixty head of cattle identified by Elliott. It is, however, strongly contended that the mortgage in question is wholly void as to innocent purchasers because it was not deposited in the office of the register of deeds of the county where the mortgagor at the time resided. It is claimed that when the mortgagor of personal property is a resident of this state the mortgagee has no alternative, but must file the mortgage in the county where such mortgagor at the time resides.

Section 4244 of the General Statutes of 1901 provides :

"Every mortgage or conveyance intended to operate as a mortgage of personal property, which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage or a true copy thereof shall be forthwith deposited in the office of the register of deeds in the county where the property shall then

be situated, or if the mortgagor be a resident of this state, then of the county of which he shall at the time be a resident."

The disjunctive conjunction "or" is here used in its ordinary and generally accepted sense ; it expresses the alternative, and gives to the mortgagee his choice of depositing the mortgage either in the county where the mortgaged property shall at the time be kept or in the county where the mortgagor shall at the time reside, if he be a resident of the state.

The disjunctive conjunction "or" in its ordinary meaning corresponds to the word "either." (17 A. & E. Encycl. of L. 218.)

Under a statute in Kentucky which provides that "no execution shall issue to any other county than that in which the judgment was rendered, or that in which the defendant resides, until execution has issued to one of the counties named, and has been returned by the proper officer 'no property found,' as to all or part thereof," and further provides that "This section is not to apply when the plaintiff, his agent or attorney, shall make affidavit, and file the same with the clerk, stating that the defendant . . . has no property subject to execution in the county of his residence, or that in which the judgment was rendered ; but on his filing such affidavit an execution may issue to any county the plaintiff may direct," it was insisted that the prescribed affidavit, to be sufficient, must show the non-existence of property of the defendant subject to execution as to both of the counties named instead of one of them only. The court, however, held that the disjunctive "or" was used in the alternative sense, and that an affidavit which showed that the defendant had no property in one of the counties mentioned would justify the issuance of an

execution to any other county. (*Vance's Adm'x v. Gray & Saffell*, 72 Ky. 656, 658.)

A statute like the one under consideration was construed by the supreme court of Texas in *Oxsheer v. Watt*, 91 Tex. 124, 44 S. W. 67, 68. This statute, after providing for the giving of chattel mortgages, reads:

" . . . Such instrument shall be absolutely void as against the creditors of the mortgagor or person making the same, and as against subsequent purchasers and mortgagees or lien-holders in good faith, unless such instrument, or a true copy thereof, shall be forthwith deposited with and filed in the office of the county clerk of the county where the property shall then be situated, or if the mortgagor or person making the same be a resident of this state, then of the county of which he shall at the time be a resident."

The court said:

"The disjunctive conjunction 'or', as here used, is purely and strictly alternative in its effect, and expresses that a choice may be made of one of the two places in which the registration of a mortgage may be had. . . . There is nothing in the context nor in the subject of legislation in this statute to give to the word a different meaning than that in which it is ordinarily used. There is nothing in the last clause of the sentence under discussion which limits the right to register chattel mortgages in the county where the property is situated to that class of mortgages given by non-residents, but it stands, broadly expressed, as embracing all chattel mortgages, no matter by whom executed. . . . We think that the meaning of the language we have been discussing is made clear by transposing it, and supplying what is understood, so as to read as follows: 'Unless such instrument or a true copy thereof shall be forthwith deposited in the office of the county clerk of the county where the property shall be situated, or in the office of the county clerk of the county of which the mortgagor

or person making the same shall be at the time a resident, in case he be a resident of the state.' ''

Our statute reads :  '' Or if the mortgagor be a resident of this state, then of the county of which he shall at the time be a resident.''

It is contended that the conjunction '' then'' as used in this clause is equivalent to such phrases as ''in that event'' or ''under such circumstances,'' and like expressions, and as thus read emphasizes and gives color to the construction contended for by the defendant in error.    Conceding the premises, the conclusion by no means follows.    An equivalent phrase cannot enlarge or change the meaning of that of which it is the equivalent.

The mortgage, having been deposited in the office of the register of deeds of the county in which the mortgaged property was at the time kept, is not void as to innocent purchasers because not deposited in the office of the register of deeds of the county in which the mortgagor at the time resided.

For the reasons herein expressed, the judgment of the court below is reversed and the cause remanded for a new trial.

JOHNSTON, CUNNINGHAM, JJ., concurring.

ELLIS, J., dissenting.