No. 22,281.

THE TORONTO STATE BANK, *Appellee*, v. W. F. GUY (Revived in the name of CREOLA O. M. MORTON, as sole surviving heir of W. F. GUY), *Appellant*.

### SYLLABUS BY THE COURT.

1. REPLEVIN—*Chattel Mortgage—Evidence of Prior Chattel Mortgage Competent.* The evidence examined, and it is held that a certain chattel mortgage was properly received as evidence as a part of the history of the dealings between the parties to the subsequent mortgage forming the basis of this action.

2. SAME—*Chattel Mortgage—Recorded in Proper County.* The maker of a chattel mortgage executed in October, 1916, was shown to have lived during that fall in a county adjoining the one where the mortgaged property was located. *Held,* That the instrument was properly recordable in either county.

3. SAME—*Evidence Sustains Judgment.* The evidence fairly supports the conclusions reached by the trial court.

4. APPEAL—*Error in Notice of Appeal—Waiver.* The dates on which judgment was rendered and the motion for new trial overruled were not correctly stated in the notice of appeal, but it was served in time and, no motion to dismiss having been filed, it will be assumed that the dates named were incorrect by reason of a clerical error.

Appeal from Woodson district court; OSCAR FOUST, judge. Opinion filed February 7, 1920. Affirmed.

*G. H. Lamb,* and *W. E. Hogueland,* both of Yates Center, for the appellant.

*S. C. Holmes,* and *S. C. Holcomb,* both of Yates Center, for the appellee.

The opinion of the court was delivered by

WEST, J.: The defendant appeals from a judgment in replevin involving a certain black horse, complaining that the court erred in permitting the introduction of a certain chattel mortgage, that the judgment and findings of the court are not sustained by the evidence and are contrary to law.

The amended petition alleged that about October 23, 1916, one F. P. Wilson, executed to the plaintiff a chattel mortgage to secure the payment of $262.69 on certain property including "one black horse, 3 years old" described as in

Woodson county. It was alleged that this mortgage was filed for record in Woodson county, and that the plaintiff had a special ownership in "one black horse, 3 years old," described in such mortgage as being the only horse of the kind owned by F. P. Wilson at the time of its execution and delivery, and that it was intended to cover the identical horse which afterwards came into the possession of the original defendant, W. F. Guy. To the amended petition the defendant, Morton, filed an amended answer denying generally the plaintiff's allegations.

It is claimed that the description "one black horse, 3 years old" is void. Also, that the horse was never in Woodson county until Guy brought him there, and that the mortgage sued on was not recorded in the county in which the property was situated nor in which the mortgagor resided at the time. It seems that Guy had died, and the mortgagor, Wilson, was a fugitive from justice, and, therefore, the case had to be tried without their evidence.

The president of the plaintiff bank testified that he had known F. P. Wilson a little over three years, and that he had not seen the horse until after a former mortgage was taken; that he went to Guy and told him that he had a mortgage on the F. P. Wilson horse. John Sowder testified that he was acquainted with Wilson and with a certain black horse he had, and which he formerly owned and sold to Wilson. Wilson owned no other gelding. The horse was two years old in the spring when Wilson got him in the fall. Witness sold the horse to Wilson in the fall of 1915, and Wilson put a mortgage on him to the Toronto State Bank and got the money with which he paid witness $125. W. S. Wilson testified that he was a brother of F. P. Wilson; and that he knew the black horse his brother owned, a smooth regular horse, seemed to be coal black. Witness met Guy in the road, who said he was going to get the horse he had bought from witness' brother. The horse was kept in Greenwood county until Col. Guy bought it. Then it was kept in Woodson county. There was no other black horse on the places owned by him or his brother. George Guthrie testified that he knew the horse Guy got from Wilson and helped catch him. Guy said he got the horse from Frank [F. P.] Wilson. F. P. Wilson had no

other horse. A. L. Cable testified that on June 23, 1916, F. P. Wilson made a mortgage to the bank covering one black horse, two years old, with a star in its face. This mortgage took up the one made to Mr. Sowder. The mortgage given October 23, 1916, was for a larger amount, covering all three horses. The cashier of the plaintiff bank swore that Wilson made the mortgage on the black horse now in controversy in September, 1915, he thought. Wilson then lived in Greenwood county. He made the first mortgage to pay the bank the money he paid to Sowder, who sold the horse to Wilson. Later he made another mortgage which was recorded in Greenwood county, and still later a third, which was recorded in Woodson county. The original answer contains the following:

"This defendant says that the said W. F. Guy purchased the property in controversy of one F. P. Wilson, without any notice or knowledge whatever of any pretended claim or lien of said plaintiff bank to the same, and defendant specifically denies that the plaintiff bank had any valid or subsisting lien on the property in controversy at the time said W. F. Guy purchased the same."

R. F. Morton, for the defendant, testified that in the fall of 1916 he went to the Wilson farm with Mr. Guy to get a black horse. He said, "We got horse just shed in for half past four years old," and that this horse and the one last taken by the sheriff were as much alike as two peas. R. F. Morton, recalled, testified that all the black horses on Guy's place, at the time these horses were taken, were coming five years old. None three years old at the time the sheriff took them.

"Soon after we got this horse from Wilson's I learned the bank had a claim against it. I came over to Guy's and he called my attention to it."

The mortgage of October 23, 1916, was recorded in Woodson county and Guy took the horse there from Greenwood county where he got it. W. S. Wilson testified that his brother worked and lived in Woodson county during the summer and fall of 1916, but all the time he was in Woodson county the horse was kept by the witness in Greenwood county. The plaintiff's cashier testified that he heard Wilson was in Woodson county and staying there, and he thought he had better have the mortgage recorded there. As the mortgagor then apparently resided in Woodson county, that

was the place to record the mortgage. (Gen. Stat. 1915, § 6495. See, also, *Bank v. Bond,* 64 Kan. 346, 67 Pac. 818, holding under the circumstances either county was a proper place for recording the instrument.)

If, as testified, this was the only black horse owned by the mortgagor, the purchaser, having constructive notice of a mortgage on Wilson's black horse, was required to ascertain whether or not he was purchasing encumbered property.

As Exhibit 1, a former chattel mortgage covering a certain black horse, was a part of the history of the course of dealing between the bank and Wilson, and especially as the trial was before the court without a jury, no material error arose from receiving this exhibit in evidence.

We have sent for the transcript and read all the evidence in the case and are forced to the conclusion that it sustains the conclusion reached by the trial court as to the identity of the horse in controversy. This disposes of the contention of the defendant.

The plaintiff asks in its brief that the appeal be dismissed because the dates of the judgment and the order denying the motion for a new trial were not correctly stated—or not stated at all—in the notice of appeal. The notice, however, was in time and shows an attempt to appeal from decisions adverse to the defendant, and as no motion to dismiss was ever filed, we will assume, as the plaintiff probably did, that the office boy who probably prepared the notice allowed a clerical error to creep in as to the dates. Only this, and nothing more.

The judgment is affirmed.