## DOUGLAS PARK JOCKEY CLUB v. GRAINGER et al.

### (Circuit Court, W. D. Kentucky. May 24, 1906.)

1. COURTS—JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION.

A suit to enjoin officers or agents of a state from exercising powers conferred on them by a state statute, on the ground that their action is in violation of the property rights of complainant under the Constitution of the United States, is within the jurisdiction of a federal court, without regard to the citizenship of the parties, where the requisite amount is involved.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, § 820.

Jurisdiction of federal courts in action involving federal question, see notes to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore Purch. Co. v. Boston & M. C. C. & S. Min. Co., 35 C. C. A. 7.]

2. CONSTITUTIONAL LAW—ACTION OF STATE—EXERCISE BY OFFICERS OF AUTHORITY UNDER STATE STATUTE.

Where state officers, in the exercise or attempted exercise of their official authority, deny to any citizen, whether an individual or a corporation, the equal protection of the laws, or deprive him of his property without due process of law, the act is that of the state, and comes within the prohibition of the fourteenth constitutional amendment.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Constitutional Law, § 678.]

3. SAME—CONSTITUTIONALITY OF STATE LAW.

The unconstitutionality of state legislation may be manifested either on its face in its express provisions, or in the manner of enforcing and carrying it into effect.

4. SAME—DENIAL OF EQUAL PROTECTION OF LAWS.

Act Ky. March 26, 1906, to regulate racing within the state, provides that any corporation formed for the purpose of racing and breeding or improving the breed of horses and conducting races and contests of speed "shall have the power and right, subject to the provisions of this act, to hold one or more running race meetings in each year." It creates a state racing commission, with power to prescribe the rules, regulations, and conditions under which running races shall be conducted, and provides that no such races shall be conducted except by a corporation or association duly licensed by said commission; that any corporation or association desiring to conduct such racing may apply annually to the commission for a license, which the commission may grant for one year if in its judgment a "proper case" for its issuance is shown. Complainant was a corporation chartered by the state, with power to establish and maintain a race track and to conduct races thereon, and was the owner of grounds, buildings, etc., used for such purposes of large value. Held, that such statute gave the commission no power to arbitrarily discriminate between applicants for licenses, by means of regulations governing the granting of such licenses or otherwise, and that its action in refusing complainant a license solely on the ground that it had "assigned a date" for the holding of a race meeting to another association, which would conflict with the date on which complainant desired to hold its meeting, was not within the authority given by the act, and whether so authorized or not was a denial to complainant of the equal protection of the laws, and deprived it of its property without due process of law, in violation of the fourteenth constitutional amendment.

In Equity. On motion for preliminary injunction.

Alfred S. Austrian, Bond, Marshall & Bond, Helm, Bruce & Helm, William Marshall Bullitt, and David W. Fairleigh, for complainant.

Lewis McQuown, D. W. Sanders, and David W. Baird, for defendants.

EVANS, District Judge. An act to regulate the racing of running horses in the commonwealth of Kentucky, and to establish a state racing commission, and prescribing its powers and duties, was enacted by the General Assembly, and was approved by the Governor on the 26th day of March, 1906. Pursuant to its provisions, the Governor appointed the defendants to constitute the state racing commission. Section 1 of the act referred to is in this language:

"Any corporation formed for the purpose of racing and breeding or improving the breed of horses and conducting races and contests of speed, shall have the power and right, subject to the provisions of this act, to hold one or more running race meetings in each year, and to hold, maintain and conduct running races at such meetings. At such meetings the corporation or the owners of the horses engaged in such races, or others who are not participants in the racing, may contribute purses, prizes, premiums or stakes to be contested for; but no person or persons other than the owner or owners of a horse or horses contesting in a race shall have any pecuniary interest in a purse, prize, premium or stake contested for in such race, or be entitled to, or receive any portion thereof after such race shall have been finished; and the whole of such purse, prize, premium or stake shall be allotted in accordance with the terms and conditions of such race. Such meetings shall not be held except during the period extending from the 1st of April, to the 1st day of December, inclusive in each year. No running races are authorized or shall be permitted except during the period aforesaid, nor except between sunrise and sunset."

## Section 3 is as follows:

"Said commission shall have the power to prescribe the rules, regulations and conditions under which running races shall be conducted in this state, and no such races shall be conducted, except by a corporation or association duly licensed by said commission, as herein provided. Any corporation or association desiring to conduct such racing may annually apply to the state racing commission for a license so to do. If in the judgment of the commission a proper case for the issuance of such license is shown, it may grant the same for a term of one year; and every such license shall contain a condition that all races or race meetings conducted thereunder shall be subject to the rules, regulations and conditions from time to time prescribed by the commission, and shall be revocable by the commission for any violation thereof, or whenever the continuance of such license shall be deemed by the commission not conducive to the interests of legitimate racing. But if said license is refused or revoked, said commission shall publicly state its reasons for so doing, and said reasons shall be written in full in the minute book of said commission, which shall at all times be subject to inspection upon application of anyone desiring to do so; said finding of said commission shall be subject to the review of a court of competent jurisdiction: provided, that a refusal of the commission to grant any racing association a license or to assign any racing association at least forty days in each year if desired for racing at such association, and the decision of such commission revoking any license of any association shall be subject to review of the courts of the state."

Subsequent sections impose severe and comprehensive penalties for violations of the statute.

The complainant is a body corporate, organized under the laws of Kentucky, with the right and power, among other things, to establish and maintain a race track, to give exhibits of speed and races between horses, to charge the public for admission, to give premiums, and to engage in pool selling, bookmaking, and registering bets, to purchase real estate, and make improvements thereon. The charter of the complainant upon its face appears, therefore, to bring it within those provisions of section 1 of the act under consideration, which, in

terms, gives corporations like the complainant the right and power, subject to the provisions of the act, to hold one or more running race meetings in each year, and to hold, maintain, and conduct running races at such meetings. The legislation of the state being thus, the complainant has filed its bill of complaint, setting forth its rights under its charter, and averring that upon the faith thereof it had heretofore purchased very valuable real estate in Jefferson county, near the city of Louisville, and had erected very extensive and very costly and valuable improvements and tracks thereon, which are adapted only to the purpose of meetings for running races, the races themselves, and preparations and facilities therefor; that the defendants, as such state racing commission, and acting as such, have arbitrarily, unjustly, and without any good reason refused to license it under the provisions of the act for the period beginning April 1, and ending December 1, 1906, which conduct upon the part of the defendants, it is asserted, will greatly, and to the extent of many thousands of dollars, injure and destroy the complainant's property, and thus deprive complainant of the property so destroyed and diminished in value without due process of law; and it is further claimed that the alleged unjust and arbitrary conduct of the defendants set forth in the bill denies to the complainant the equal protection of the laws of the state of Kentucky. We have not undertaken to set forth in detail all the averments of the bill, but only to indicate, in very general terms, the grounds upon which the complainant insists that the acts of the defendants are in violation of the fourteenth amendment to the Constitution of the United States.

In every case brought here the first inquiry must be whether the court has jurisdiction. The judiciary act of 1887, as amended by the act of 1888, gives the Circuit Court of the United States original cognizance, concurrent with the courts of the several states, over all suits of a civil nature in law or in equity where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of $2,000, and arising under the Constitution or laws of the United States. Under this provision, it is perfectly well settled that the courts of the United States have jurisdiction, without regard to the citizenship of the parties, over all such cases as are described in the judiciary act, and wherein what is called a federal question is raised by the plaintiff's petition or bill of complaint, and as the courts of the United States, especially the Supreme Court, are the final arbiters of constitutional construction, the power of those courts extends over all statutes, whether passed by a state Legislature or by Congress, which are claimed to be in contravention of the Constitution of the United States, though not to statutes claimed to be void under a state Constitution. No citation of authorities is necessary upon tl ese propositions, but many of them are collected in section 84 of Desty's Federal Procedure.

Manifestly, the complainant in its bill claims rights under the Constitution of the United States in a case where the matter in dispute exceeds the sum or value of $2,000, exclusive of interest and costs, and we reach the conclusion, therefore, that this court has the right

and power to hear and determine the case presented by the bill, and that is jurisdiction.

When any legislation of a state comes under contention in a court of the United States, it is always to be regretted if its proper construction as to the interpretation of its language and as to its relation to the provisions of the state Constitution have not been determined by the highest court of the state, for, if the construction of such legislation in those respects has been determined by the state court, the result is at once uniformly accepted and followed by the federal courts. If, however, the state court has not determined those matters, the federal court, in pertinent cases, must deal with them as best it can. In the case before us we are gratified to find that we shall not be compelled to go very far into that work, for it seems to us that the questions here to be solved have reference in the main to the Constitution of the United States, and especially to the fourteenth amendment thereto, and in such cases a different rule prevails, for, however persuasive the decisions of the state courts upon questions of constitutional law may be, they are not binding as authority upon the federal courts. Having these general propositions in view, we have not been able to perceive how the act of 1906 violates the Constitution of the state of Kentucky, and we shall assume, rather than decide, that on its face it does not violate the Constitution of the United States, but we may, and in this case we must, go beyond the mere language of the act.

The applicable clause of section 1 of the fourteenth article of Amendments to the Constitution of the United States is as follows:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within the jurisdiction its equal protection of the laws."

It is entirely well settled that when state officers, in the exercise or attempted exercise of their official authority, deny to any citizen the equal protection of the laws, or deprive him of his property without due process of law, it is the state itself which does it, and such official action therefore comes within the constitutional prohibitions (Ex parte Virginia, 100 U. S. 313, 25 L. Ed. 667; Neal v. Delaware, 103 U. S. 370, 26 L. Ed. 567; Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220; Carter v. Texas, 177 U S. 442, 20 Sup. Ct. 687, 44 L. Ed. 839), and that corporations are within the protection of the fourteenth amendment was held in Santa Clara County v. Railroad, 118 U. S. 394, 6 Sup. Ct. 1132, 30 L. Ed. 118, and Pembina v. Pennsylvania, 125 U. S. 187, 8 Sup. Ct. 737, 31 L. Ed. 650.

It has also been held that the unconstitutionality of the state legislation may be manifested in either one or two ways, namely—either (1) upon its face in its express provisions; or (2) in the manner of enforcing and carrying into effect such legislation. Owensboro, etc., Bank v. City of Owensboro, 173 U. S. 664, 19 Sup. Ct. 537, 43 L. Ed. 850; People v. Weaver, 100 U. S. 539, 25 L. Ed. 705; Whitbeck v. Bank, 127 U. S. 193, 8 Sup. Ct. 1121, 32 L. Ed. 118, and other cases. If in the latter way, the facts should be carefully inquired

146 F.—27

into, and nothing left to mere inference; but if in the former, the question can be determined upon consideration of the mere language of the legislative enactment. In this case we are to inquire into the manner in which it has been attempted to carry into effect the act of the Legislature to which we at first referred, and ascertain whether, by the official conduct of the defendants, the complainant has been deprived of any of its property without due process of law, or whether it has been denied the equal protection of the laws. It may be that the latter clause will be the one most nearly applicable to this case, though possibly both clauses may require very earnest consideration.

What we have said may sufficiently indicate, in a general way, the questions with which we are to deal, though notice of one other general propositon may be appropriate. It is this: The public policy of Kentucky as to permitting horse racing has been very plainly manifested for many years, although never more plainly than in the charter of the complainant and in the act of 1906, and there can be no pretense that it is or has ever been the policy of the state to prohibit it as immoral, any more than does the public policy of England, France, Tennessee, California, Louisiana, Maryland, New York, and other states. And this is true, however much public scandal and immorality in various ways may sometimes result from the apparently inevitable accompaniments of horse racing in our day. Hence, a court of equity may not fairly say in a contest like this that the complainant comes into court to ask its aid' in support of an immoral and vicious practice. The state has decided otherwise. Nor could a court properly under that decision invoke a plague upon all race tracks and racing associations, unless defendants' description of at least some of them be true, nor unless there was reasonable hope that the invocation would be promptly and favorably responded to.

Having ascertained that the bill of complaint presents, prima facie, a case upon which this court may exercise jurisdiction for the purpose and with the aim of protecting a right claimed under the Constitution of the United States, and having found that the right for which protection is asked is not one which the public policy of the state of Kentucky forbids, we have reached the inquiry, whether a case for an injunction was made at the hearing? However, before passing to that general question, it may be well to advert to another phase of the law of Kentucky.

Section 2 of the Constitution of the state is in these important words:

"Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."

Section 27 divides the powers of the commonwealth into three distinct branches, to wit, the legislative, executive, and judicial, and section 28 prohibits officers of one department from exercising the rights and powers of the officers of any other of those departments. Doubtless, it was in deference to these provisions that the General Assembly incorporated into the act of 1906 these provisions which provide for a review by the courts of the action and decisions of the state racing commission. This was an important provision, which might possibly

save the act from a taint of unconstitutionality in bestowing judicial power upon an executive body. It will be remembered, also, that in any case of which the federal courts have jurisdiction the remedies to which any person may be entitled in the state court under state laws, may, if appropriate, be enforced in the national tribunals, as well as in the state courts. Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, 28 L. Ed. 52; Chapman v. Brewer, 114 U. S. 170, 171, 5 Sup. Ct. 799, 29 L. Ed. 83, and cases cited. So that, as the state courts could apply that remedy, we conclude this court in this case has the right, and that it is its duty, to review the act and determination of the defendants in relation to which this action was instituted, and to determine whether that action and determination is, in its necessary result, a denial to the complaint of the equal protection of the laws, or whether it deprives the complainant of any of its property without due process of law, within the meaning of the fourteenth amendment of the Constitution of the United States.

Undoubtedly, the state of Kentucky has the right, in the fair exercise of its police power, to regulate horse racing. It is equally certain that the state may establish a state racing commission, to carry into effect its purpose to that end; but it is fair to presume that the courts of the state would hold, and that the Legislature contemplated that they would hold, that the acts of the commission and the rules and regulations prescribed by it should be general, and should bear equally and fairly upon all corporations which are authorized by the state to hold meetings for running races, thus putting all of them upon a fair and equal footing, without making favorites of any. It is not to be presumed that the act of 1906 meant to do anything else, or intended that the commission should do anything else, or intended, if the commission attempted it, that the courts should not revise and correct such attempted action. Upon its face the act of 1906 appears to us to require perfect equality and fairness to all. To effectuate that purpose it made it the duty of the state racing commission to make rules and regulations, which phrase, ex vi termini, necessarily means general rules and regulations applicable alike to every corporation which is authorized to hold meetings for running races, and which rules, upon being complied with, entitle every one to precisely the same treatment. The defendants had made no rules nor regulations to govern after the license was granted. They had attempted, and perhaps properly, to judge each application for a license separately, and upon separate and distinct considerations, granting a license to one, and refusing it to another in the same way, and entering upon its records, as the statute requires, its reasons for its action in either case. Undoubtedly, it was within the range of legislative contemplation that there might be sharp rivalries, and that, however fair the commission might intend to be, its actions might not bear equally upon all rivals, and that the courts consequently should review the decisions of the commission.

We have listened with great pleasure to the able argument of this case upon the one side and upon the other, though finding it unnecessary to notice all the points raised by counsel. Indeed, we are so pressed for time that we are not able very elaborately to go into many

phases· of the discussion upon which an expression of opinion might not be inappropriate nor undesirable. Perhaps, not unnaturally, the presence on the commission of the president of one of the rival jockey clubs has caused some comment by counsel, as an indication of the grounds upon which the alleged favoring of that club in the action of the commission occurred. However, the court will lay no stress upon that circumstance. It prefers to assume that the defendants have all been actuated by a sincere desire to discharge their public duties, and we proceed to test the validity of what they have done by the provisions of the act under which they were appointed. That act, in terms, provides that any corporation formed for the purpose of racing and breeding and improving the breed of horses and conducting races and contests of speed shall have the power and right, subject to the provisions of the act, to hold one or more running race meetings in each year, and to hold, maintain, and conduct running races at such meetings. These meetings, however, are not to be held except during the period extending from the 1st day of April to the 1st day of December in each year. The act further provides that the commission shall have power to prescribe the rules, regulations, and conditions under which running races shall be conducted in this state, and that no such races shall be conducted except by a corporation or association duly licensed by the commission, and that any corporation or association desiring to conduct such racing may annually apply to the commission for a license to do so, and in proper cases such license may be granted for one year. As before pointed out, it is also provided that, if a license is refused, the reasons therefor shall be entered of record, and the decision of the commission thereon shall be subject to review by the court. Obviously, the latter provision would be useless unless the court, upon reviewing that action, could control the commission's conduct so far as to reverse, if necessary, its decision, and determine what should be done in the case. In the absence of any construction of the act by the Court of Appeals of Kentucky, we, for the purpose, at least, of this hearing, so ·construe its provisions. Looking into those provisions as we have analyzed them, we find it difficult to hold that "applying for dates," which is certainly not specifically authorized, is equivalent to applying for a "license," which is; but it seems to be admitted by the answer of the defendants that the other jockey clubs applied for dates, and that the complainant also did so, and that the defendants in their official capacity interpreted this to be a proper mode, or at least one which was approved by them, of applying for a license, and for that reason alone we must regard the complainant's case as one where a license was applied for in the way preferred by the commission, and that the license was refused, as clearly appears, upon the sole ground that a license or dates had been given or assigned to the Louisville Jockey Club at Louisville for the period during a part of which the complainant desired to have its running races in the spring of 1906.

We are much inclined to think that the fundamental error of the defendants has been in misinterpreting the act of the Legislature, and in undertaking to "assign dates" instead of granting "licenses." The latter power is given; the former, at least in terms, is not. Under-

taking to assign dates in this sense is not within the fair purview of the act, and, instead of doing the general thing which is implied in the granting of the license, and which ought to work out results equally fair to all, they went beyond the authority referred to by the act, and entered upon a course where injustice and inequality were almost or quite inevitable. What the statute seems to authorize is to give permission to hold running race meetings at any time between April 1st and December 1st, and it does not seem to confer any power any further to control the acts of the licensee as to the times when he may hold his meetings. That is his own affair, and he is to be governed by his own notion of what is best for his own success; and it may be doubted whether the right to prescribe rules, regulations, and conditions conferred by the third section refers to the license at all, as the language conferring that power seems rather to confer it as to conducting the races after the license has been given. The act does authorize, and perhaps, in practical interpretation, requires, the commission to grant the license in a proper case, and, if it refuses to do so, requires it to state its reasons therefor upon its record, and confers upon the courts the power to review that decision of the commission; and we have interpreted this provision to be meaningless unless it confers upon the court the power to determine when there is a proper case for granting the license. What should be regarded as a proper case? Certainly we are to presume that there were no fair objections to complainant, personally, so to speak, as an applicant for a license, inasmuch as the record indicates no such ground of objection. Can the phrase "proper case" mean that the commission shall take into consideration the general moral propriety of permitting running races in Kentucky? The answer to this must be in the negative, for, as we have seen, the Legislature has settled the state's policy in that regard for itself, and did not delegate to the commission the power to do so, nor to impugn that action of the General Assembly. Can it mean that a proper case is one where profit can be made, or is that a matter of business, determinable only by those who want to take the chance to make money, or to stimulate the popularity of a good breed of horses? Can it be that a proper case depends either upon whether a given track is fully prepared at the time of application, or whether a rival corporation has either previously acquired a license, or that it has palled and satiated the public appetite for racing, and that therefore the commission should exercise a sort of paternal care and protectorate over the applicants, rather than let them exercise their own judgments upon these phases of the case? Was competition in running races intended to be forbidden by the act, or was competition intended to be encouraged? Rather does not a proper case depend, first, upon the power of the applicant conferred by its own charter; second, upon the possession of a track and other arrangements which are suitable, or which by the time of a proposed meeting could be made suitable, for holding and conducting running races upon either a small or large scale, as might best suit the applicant; or, third, upon other fair considerations as to the capacity of the applicant to do what he is licensed to do? It will also be noticed that the act further authorizes the commission to revoke any license after it is granted if the licensee in the

conduct of its race meeting violates the rules, regulations, and conditions which the commission has made, and which rules and regulations must, as we have seen, apply equally and alike to all licensees.

To conclude, it seems to us, after a very careful effort to give proper interpretation and effect to the legislation, that the questions we have suggested as to what is a proper case for a license are not difficult to answer so far as they are applicable to the complainant. By its charter it is authorized to hold and conduct running race meetings, and it should not be deprived of the fair advantages of so doing and of the proper use of its property at any time it chooses to select between this date and December 1st of this year, unless upon reasons appearing upon the defendants' record, upon which the court should hold the case not to be a proper one. The court has concluded from the testimony and from the record before it that no just cause of objection to the complainant as a personality is shown; that it can within reasonable time, if it is not quite so now, be abundantly equipped and prepared for holding and conducting such meetings, and that great damage would be done to it if refused the license applied for. Further, the court finds that whatever evils may have attended running race meetings as portrayed in the defendants' answer, those evils were not so much caused by the complainant, which has never held a meeting, as they might have been by the older jockey clubs, which have held regular meetings for many years; and, indeed, it might possibly be, if continuous racing would destroy the business, and if the concomitant evils are as great as pointed out in the defendants' answer, that it might be well to remedy the evil by making the meetings so continuous as to destroy the source and origin of those evils. Still, as we have said, that is a matter for legislative consideration.

The defendants' answer is elaborate and ably argumentative, but while the arguments and the considerations they present might, if presented to the Legislature, have induced it to prohibit all forms of racing in Kentucky, the court is not at liberty while interpreting and enforcing the law to give weight to such considerations. The fact appears to be that, with its charter behind it, with the ability to conduct a running race meeting, and with no legal difference in its situation and that of the Louisville and Latonia Jockey Clubs, the complainant, along with those clubs, applied for a license in the form preferred by the defendants. Licenses were promptly granted to the other two clubs, and this, no doubt, was a proper exercise of the authority of the commission. But a license was refused to the complainant upon the sole reason, as stated by the defendants, that the dates applied for had already been assigned to other licensees. In legal contemplation, under the act, this can only mean that a license was refused to the complainant because one had been granted to the Louisville Jockey Club. This is evident when we use the proper word "license" instead of the improper phrase "assignment of dates." In reviewing the decision of the state racing commission, whereby a license upon this ground only was refused to the complainant, we have concluded that the reason given was no legal reason at all, any more than granting a license to one person to practice law would, per se, be a just reason

lor denying it to another person equally fit, but that the act of the commission was arbitrary, unduly oppressive, and an unjust discrimination against the complainant, whereby it was denied the equal protection of the laws of the state of Kentucky, and such discrimination, if permitted to stand, would greatly injure the complainant in its property, and that, as all this was done by the officers of the state, it was done by the state itself, and therefore contravenes the fourteenth amendment to the Constitution of the United States.

We think the general purpose of the enactment was clearly within the competency of the Legislature, but the reluctance of a federal court, except in plain cases, to declare a state statute to be unconstitutional has led us to interpret the meaning of the act rather than to attempt to overthrow it. We think the enforcement of a proper interpretation of the act will remedy the wrong done the complainant, and are content with that result; but if we were compelled to go further, there is much in the opinion of the Supreme Court in Yick Wo v. Hopkins, 118 U. S. 357, 6 Sup. Ct. 1064, 30 L. Ed. 220, Dobbins v. Los Angeles, 195 U. S. 223, 25 Sup. Ct. 18, 49 L. Ed. 169, and possibly other recent cases, which might well call for great consideration, although, as the complainant is a Kentucky corporation, it would certainly seem that the state had much greater power over its own creature than it could have over an individual citizen.

We are quite clear in the conviction that the views we have expressed are correct and controlling, but if we had any doubts they would be solved in favor of granting the pending motion for a temporary injunction, because, if the injunction is granted, the defendants, under the act of April 14, 1906, might be able to appeal the case within 30 days to a higher court, and thus obtain the opinion of that court upon the questions involved, while if we denied the motion the complainant could not appeal.

It results that the motion should be sustained. What shall be the form of the order has been considered, and upon the authority of what was said by the Supreme Court in Re Lennon, 166 U. S., at page 556, 17 Sup. Ct. 658, 41 L. Ed. 1110, we are disposed to think that one clause of the order should enjoin the defendants from longer refusing to grant in due form a license to the complainant to hold one or more race meetings, as authorized by the act, at any time or times it may elect between this date and the 1st day of December, 1906, not exceeding, of course, the number of days fixed by the act.