POMPANO HORSE CLUB, INC., *et al.*, *Appellants*, v. STATE *ex rel.* JOHN M. BRYAN, *Appellee.*

En Banc.

Opinion Filed March 9, 1927.

1. In its elementary sense, the word "or" is a disjunctive particle indicating an alternative. It often connects a series of words or propositions, presenting a choice of either.

2. Employed between two terms which describe different subjects of a power, the word "or" usually implies a discretion when it occurs in a directory provision, and a choice between two alternatives when it occurs in a permissive provision.

3. When a State, exerting its recognized authority, undertakes to suppress what it is free to regard as a public evil, it may adopt such measures having reasonable relation to that end as it may deem necessary in order to make its action effective.

4. When authority is properly conferred upon a private citizen to bring a suit in equity, in the name of the State, for the purpose of suppressing by injunction a public nuisance, the suit is in effect one instituted in behalf of the public, and in which the public is the real complainant, to the same extent as though the suit was brought by the Attorney General or public prosecutor.

5. Under the provisions of Sec. 3223, Revised General Statutes, 1920, a private citizen of the county affected may institute a suit in equity, in the name of the State, to suppress a public nuisance, without first requesting the public officers therein named to bring the suit, and without showing a refusal on the part of such officers so to do.

6. A proceeding by suit in equity, pursuant to Sec. 3223, Revised General Statutes, 1920, to suppress by injunction, as a public nuisance, the operation or maintenance of premises

where gambling or games of chance are engaged in in violation of law, does not deprive the defendant in such suit of a right to trial by jury as secured by the Constitution.

7. The rendition of a decree against the defendant in a proceeding, pursuant to Sec. 3223, Revised General Statutes, 1920, to suppress by injunction as a public nuisance the operation or maintenance of premises where gambling or games of chance are engaged in in violation of law, does not operate to deprive the defendant of property without due process of law.

8. The rendition of a decree against the defendant in a proceeding by suit in equity, pursuant to Sec. 3223, Revised General Statutes, 1920, to suppress by injunction, as a public nuisance, the operation or maintenance of premises where gambling or games of chance are engaged in in violation of law, does not constitute a taking of private property for public use, without just compensation.

9. A proceeding by suit in equity, pursuant to Sec. 3223, Revised General Statutes, 1920, to suppress by injunction, as a public nuisance, the operation or maintenance of premises where gambling or games of chance are engaged in in violation of law, does not deprive the defendant in such cases of the equal protection of the law.

10. The provisions in Sections 3223, et seq., Revised General Statutes, 1920, authorizing a proceeding to suppress by injunction, as a public nuisance, the operation or maintenance of premises where gambling or games of chance are engaged in in violation of law, does not violate the constitutional guaranty that "no person shall be subject to be twice put in jeopardy for the same offense."

11. In this State, Courts of Equity have no jurisdiction to enjoin the commission of crime, nor will equity act to prevent an illegal act merely because it is illegal. In such cases resort must be had to the criminal courts, which posses ample power to punish the wrongdoer.

12. The proceeding by suit in equity, authorized by Sec. 3223, *et seq.*, Revised General Statutes, 1920, to suppress by injunction, as a public nuisance, the operation or maintenance of premises where gambling or games of chance are engaged in in violation of law, is a proper and legitimate subject of equity jurisdiction in this State, even though no irreparable damage to a property right of the complainant is involved. The real complainant in such a suit being the State, the presence of actual injury is not an essential element of, nor a prerequisite to chancery jurisdiction.

13. There is a manifest distinction between enjoining an individual from committing a crime and enjoining the owner of property, or its possessor, from using his property in a manner or for a purpose which is duly declared to constitute a public nuisance because such use is subversive of the public peace or morals.

14. When a statute has properly declared the premises where gambling or games of chance are carried on to be a public nuisance, the State may suppress that nuisance by a suit in equity, notwithstanding it at the same time could also resort to criminal prosecution. The State may resort to either method, or both.

15. It does not lie within the legislative power to arbitrarily or capriciously declare any or every act a nuisance, but in defining nuisances the Legislature may rightfully exercise a broad and extended discretion.

16. When a group of persons, each of whom has contributed money to a common fund and received a ticket or certificate representing such contribution, adopt a horse race, the result of which is uncertain, as a means of determining, *by chance*, which members of the group have won and which have lost upon a redivision of that fund, each contributor having selected a stated horse to win such race, the redeemable value of the certificates so obtained and held by the contributors to such fund being varied or affected by the result of such race, so that the value of some is enhanced, while that of others is reduced or destroyed, the original purchase price of all having been the same, those who chose the win-

14—Vol. 93

ning horse being paid, from the fund so accumulated, more than they contributed thereto, by dividing amongst them the money contributed by those who chose losing horses and who therefore receive nothing, that process constitutes a "game of chance"; and those who buy, sell, or redeem such certificates, for the purposes and in the manner stated, are "engaged" in such game within the contemplation of Sec. 5639, Revised General Statutes, 1920. The acts just outlined also constitute "gambling" as defined and prohibited by Sec. 5514, Revised General Statutes, 1920.

17. The case of Johns v. Smith, 77 Fla. 398, 81 South. Rep. 504, is distinguishable from this case in that the transaction involved in Johns v. Smith possessed none of the essentials of a "pool" of money, in which some of the donors (depending upon the result of a horse race) would receive back from the "pool" more than they contributed thereto, while others would lose their entire contribution.

18. A "purse, prize, or premium" is ordinarily some valuable thing offered for the winner of a contest, for which the person offering it does not compete, and stands no chance of gaining back the thing offered or any part thereof.

19. A "purse, prize, or premium" differs from a "stake, bet or wager," in that in the former the donor, or person offering the same, has no chance of gaining back the thing offered, but, if he abides by his offer, he must lose; whereas, in the latter, each party interested therein has a chance of gain and takes a risk of loss.

20. The keeping of premises where gambling is practiced in violation of Sec. 5499 or of Sec. 5514, Revised General Statutes, 1920, is abatable by injunction under the provisions of Sec. 3223, et seq., and Sec. 5639, Revised General Statutes, 1920.

21. Construed ejusdem gencris, the general provision of Sec. 5639, Revised General Statutes, 1920, "or any place where any law of the State of Florida is violated," should be construed as if it had been written: "or any place where any law of the State of Florida, of the same kind or species as those specifically mentioned, is violated."

An Appeal from the Circuit Court of Broward County; C. E. Chillingworth, Judge.

Affirmed.

*Mitchell D. Price, Albert D. Hubbard, Robert C. Boone,* all of Miami; and *W. C. Hodges* and *W. J. Oven,* of Tallahassee, for Appellants;

*James M. Carson,* of Miami, for Appellees.

STRUM, J.—The State of Florida, upon the relation of John M. Bryan, a citizen of Broward County, as complainant below, instituted a suit in equity against Pompano Horse Club, Inc., and others, as defendants below, seeking the abatement by injunction of certain acts alleged to constitute a nuisance.

The bill of complaint alleges in substance that the defendant, Pompano Horse Club, is in possession of, keeps and maintains in Broward County an enclosure upon certain described lands, within which enclosure is embraced a race track or race course, a grand stand wherein those who attend said races sit for the purpose of viewing them, "and a betting ring where wagers are openly made and accepted upon the outcome of said races"; that said defendant has conducted and caused to be run certain horse races on said race track situated on said premises, said races being run in the presence of persons admitted within said premises by said defendants; that divers persons upon said premises have wagered and bet sums of money upon the outcome of said horse races, so that if the horse upon which any particular person has wagered wins said race, or comes second or third, in accordance with the terms of said wager or bet, such person wins a certain amount of money in accordance with said wager

or bet, and in the event the horse upon which the wager is made is not the winning horse, in accordance with the terms of said wager, the person making said wager loses the amount of money so bet or wagered, and a portion or portions thereof is won by other persons who selected the winning horse or horses in the race involved in said transaction, the said defendant participating in and receiving as its part of the proceeds of said transaction a portion of the money so bet and wagered as aforesaid, the said wagers being made as aforesaid upon the result of a contest of skill and speed of the horses participating in said races; that the premises aforesaid are open to the public as a gaming and gambling resort as aforesaid, and that great numbers of persons do resort to said place for the purpose of gaming and gambling in the manner aforesaid; that the said defendant has kept and does now keep, continue and maintain said place as such gaming and gambling place, and one to which it permits persons to resort for the purpose of gaming and gambling, and to which persons do actually resort for such purposes from day to day, in open and wilful disregard and violation of the laws of the State of Florida, to the injury of the public morals, welfare and decency of the community.

A general demurrer to the bill of complaint was interposed and overruled. The Chancellor heard the evidence presented by complainant upon the application for a temporary injunction, and pursuant to the prayer of the bill a temporary injunction was issued restraining the defendants from carrying on, upon the premises described in the bill of complaint, any gaming or gambling operations or otherwise conducting any other enterprise or business in violation of the law on the said premises, or any business corrupting the public morals of the community, and from directly or indirectly selling any certificates on any horse

race held or conducted on said premises, and from receiving any money on account of the sale of any certificates for any horse race on said premises, or from disbursing or paying out any money or other thing of value upon any such certificate, as a result of the contest of speed of any horse or horse races on said premises, and from committing or permitting, on said premises, any violation of the laws of the State of Florida.

The cause comes before us on an appeal from the order overruling defendant's demurrer and granting the temporary injunction.

While the language of the order appealed from is somewhat general, it should be interpreted with reference to the pleadings and proceedings in the cause, to which reference will hereafter be made. Children's Bootery v. Sutker, — Fla. —, 107 South. Rep. 345; 44 A. L. R. 698. And though the allegations of the bill of complaint are somewhat broad, the acts sought to be ejoined as a nuisance are fully defined by the statutes. The allegations of the bill of complaint follow closely the words of the statute, and are fortified by sufficient additional averments of fact to render the bill sufficient as against a general demurrer. McBride v. State, 39 Fla. 442, 22 South. Rep. 711.

It should be observed at the outset that the bill of complaint does not seek to enjoin the running of horse races. The object of the suit is to restrain the making of unlawful bets or wagers upon the result of such races, and the injunction is limited in its operation to the acts last mentioned.

The suit is brought pursuant to Sections 3223, *et seq.,* Sections 5499, 5500, 5514, and 5639, Revised General Statutes, 1920. The orders appealed from are assailed in three major particulars. Appellants assert:

First: That Section 3223, *supra,* confers upon a private

citizen no right to institute this suit in the name of the State unless and until it is first shown that demand has been made, respectively, upon the State's Attorney, the County Solicitor, and the County Prosecutor, in the County affected, to bring the suit and that such officers have each failed or declined to act.

Second: That the statutes authorizing a proceeding by suit in equity to suppress by injunction, as public nuisances the operation or maintenance of certain places or premises therein mentioned (where stakes, bets or wagers of money are made or received upon the result of any trial of skill, speed or power of endurance of man or beast; or any house, booth, shelter or other place kept for the purpose of gaming or gambling; or any place or building where games of chance are engaged in in violation of law; or any place where any law of the State of Florida is violated), are repugnant to the Federal and State Constitutions in that such procedure: (a) deprives the defendants of the constitutional guaranty of trial by jury; (b) is a taking of private property for public use without just compensation; (c) deprives the defendants of due process of law; (d) denies to the defendant the equal protection of the law; (e) places the defendants in double jeopardy; and (f) that no irreparable damage to a property right of the complainant being involved, there is nothing upon which to predicate equitable jurisdiction for relief by injunction, and the statutes therefore purport to extend and enlarge the jurisdiction of courts of chancery beyond the lawful scope of the practice and jurisdiction of such courts, in violation of the Constitution of Florida.

Third: That the plan of operation followed by appellants in the sale of certificates in connection with the running of horse races is not a game of chance; does not constitute gambling; is not in violation of any law of the

State of Florida, and hence not a nuisance as defined and contemplated by the statutes.

We shall consider these contentions in the order stated:

First: The applicable provisions of the statutes upon which this suit is predicated are as follows, the references being to the Revised General Statutes, 1920:

Section 3223 provides:

"Whenever any nuisance as defined in Section 5639 is kept, maintained or exists the State's Attorney, County Solicitor, County Prosecutor, or any citizen of the County through any attorney he may select, may maintain his action by bill in chancery in the proper court in the name of the State of Florida, upon the relation of such attorneys or citizen to enjoin said nuisances, the person, or persons conducting or maintaining the same and the owner or agent of the building or ground upon which said nuisance exists."

Section 5639 provides:

"Whoever shall erect, establish or maintain, own or lease any building, booth, tent or place which tends to annoy the community * * * or become manifestly injurious to the morals or manners of the people as described in Section 5624, * * * or any place or building where games of chance are engaged in in violation of law or any place where any law of the State of Florida is violated, shall be deemed guilty of a nuisance, and the building, erection, place, tent or booth and the furniture, fixtures and contents are also declared a nuisance, and all such persons (or places) shall be abated or enjoined as provided in Article 19, Chapter 10, Title 3, Sec. —, Div. — of these Revised General Statutes." (Section 3223, et seq.)

Section 5624 provides:

"All nuisances which tend to annoy the community or

injure the health of the citizens in general, or to corrupt the public morals, shall be indictable and punishable,'' etc.

Section 5499 provides :

''Whoever by himself, his servant, clerk or agent, or in any other manner, has, keeps, exercises or maintains a gaming table or room, or gaming instruments or apparatus, or house, booth, tent, shelter, or other place for the purpose of gaming or gambling or in any place of which he may directly or indirectly have charge, or management, either exclusively or with others, procures, suffers or permits any person to play for money or other valuable thing at any game whatever, whether heretofore prohibited or not, shall be punished by imprisonment,'' etc.  Section 5500 provides the punishment for agents and servants of those mentioned in Section 5499.

Section 5514 provides:

''Whoever stakes, bets or wagers any money or other thing of value upon the result of any trial or contest of skill, speed or power of endurance of man or beast, or whoever receives in any manner whatsoever any money or other thing of value staked, bet or wagered, or offered for the purpose of being staked, bet or wagered, by or for any other person upon any such result, or whoever knowingly becomes the custodian or depository of any money or other thing of value so staked, bet, or wagered upon any such result, or whoever aids, or assists, or abets in any manner in any of such acts all of which are hereby forbidden shall be guilty of gambling, and shall be punished by imprisonment,'' etc.

We now take up the first contention of appellants, questioning the right of a private citizen to institute this suit, as relator, in the absence of a showing that the public officers named in Section 3223, *supra,* had failed or declined, though requested, to do so.

·The statute provides that "the State's Attorney, County Solicitor, County Prosecutor, or any citizen of the County through any attorney he may select may maintain his action," etc.

In its elementary sense the word "or" is a disjunctive particle that marks an alternative, generally corresponding to "either", as "either this or that;" a connective that marks an alternative. 29 Cyc. 1502. It often connects a series of words or propositions, presenting a choice of either. Webster's New Int. Dict. (1925 Ed.). There are, of course, familiar instances in which the conjunction "or" is held equivalent in meaning to the copulative conjunction "and", and such meaning is often given the word "or" in order to effectuate the intention of the parties to a written instrument or of the Legislature in enacting a statute, when it is clear that the word "or" is used in a copulative, and not in a disjunctive sense. In statutes of this nature, however, the word "or" is usually, if not always, construed judicially as a disjunctive unless it becomes necessary in order to conform to the clear intention of the Legislature to construe it conjunctively as meaning "and". In ascertaining the meaning and effect to be given the word "or" when construing a statute, the intent of the Legislature is the determining factor. Employed between two terms which describe different subjects of a power, the word "or" usually implies a discretion when it occurs in a directory provision, and a choice between two alternatives when it occurs in a permissive provision. Thus, in construing a provision for the recording of chattel mortgages, it was said: "The disjunctive 'or' is here used in its ordinary and generally accepted sense; it expresses the alternative, and gives to the mortgagee his choice of depositing the mortgage either in the county where the

mortgaged property shall at the time be kept, or in the county where the mortgagor shall at the time reside." Springfield Third Nat'l. Bank v. Bond, 67 Pac. Rep. 818. See also 29 Cyc. 1503. And in construing a criminal statute, this Court has held that: "If a statute makes it punishable to do a particular thing specified, 'or' another, 'or' another, one commits the offense who does any one of the things, or any two, or more, or all of them." Edwards v. State, 62 Fla. 40, 56 South. Rep. 401; Strohvar v. State, 55 Fla. 167, 47 South. Rep. 4. Other instances of such construction are found in Givens v. Kendrick, 15 Ala. 648; State v. McDonald, 4 Port (Ala.) 460; Germania v. State, 7 Md. 1; Oxsheer v. Watt, 44 S. W. Rep. 676. See also 6 Words and Pharses (1st Series) 3004, et seq.; 3 Words and Phrases (2nd Series) 762, et seq. Statutes of the character of Section 3223, supra, are similarly construed, when such construction comports with the evident legislative intent.

In Nelson v. State, 84 Fla. 631, 94 South. Rep. 680, a suit brought by a County Solicitor proceeding in the name of the State, pursuant to Section 3223, et seq., supra, in which there was no allegation or proof of a prior application to the State's Attorney to bring the suit, or of the latter's failure or refusal to act, this Court, quoting with approval from Purity Extract Co. v. Lynch, 226 U. S. 192, 57 Law Ed. 184, said: "It is also well established that when a State, exerting its recognized authority, undertakes to suppress what it is free to regard as a public evil, it may adopt such measures having reasonable relation to that end as it may deem necessary in order to make its action effective." See also, State v. Fanning, 147 N. W. Rep. 215.

Within organic limitations, it is competent for the State by legislative action to designate the persons, of class or persons, who may maintain suits in the name of the State to restrain and abate public nuisances, and a

broad discretion as to the means to be used should be accorded the law-making power. Hillsborough v. Savage, 63 Fla. 337, 59 South. Rep. 835; State v. Wagner, 80 N. W. Rep. 633; 46 L. R. A. 442. When authority to bring the suit is properly conferred upon a private citizen, the suit is in effect one instituted in behalf of the public, and in which the public is the real complainant, to the same extent as though the suit was brought by the Attorney General or public prosecutor. F. C. & P: R. R. Co. v. State, 31 Fla. 482, text 504; 13 South. Rep. 103; 20 L. R. A. 419; Crawford v. Gilchrist, 64 Fla. 41, text 53; 59 South. Rep. 963; Jacoby v. Shomaker, 26 Fla. 502, text 509; 7 South Rep. 855, text 856. In case of this exact nature, see *ex parte* Allison, 90 S. W. Rep. 870, 2 L. R. A. (N. S.) 1111; State *ex rel.* Duensing v. Roby, 1 N. E. Rep. 145; 33 L. R. A. 213; 51 Am. St. Rep. 174.

The most convincing evidence that in enacting Sec. 3223, the Legislature used the word "or" in its ordinary disjunctive sense is found in the plain and uninvolved language of the statute itself. Had it been the legislative intent to create priorities of right between the officers and other persons named to bring the suit as relators, and that the right of each should be successive and in the order named, and only upon the failure or refusal to act of those having the precedent right, as is contended by appellants, it would have been a simple task to have aptly and unmistakably expressed that intention. An instance of such intention and action on the part of the Legislature is found in Sec. 4961, Revised General Statutes 1920, relating to the maintenance of actions for wrongful death and providing that such actions may be maintained by successively designated classes of persons surviving the deceased, the right of any given survivor to maintain the action being clearly dependent upon whether there is any person *in esse* having the prece-

dent right to maintain the action.    (Duval v. Hunt, 34 Fla. 85, 15 South. Rep. 876.) But we find in Sec. 3221, *supra,* no indication of an intention on the part of the Legislature to require an application to be first made, respectively, to the State's Attorney, County Solicitor, or County Prosecutor, before a private citizen of the county affected may himself institute the suit in the name of the State, and we therefore hold that this suit is properly brought by a private citizen as relator.    That the suit is brought on behalf of such relator by an attorney duly licensed to practice before the courts of the State, the bill of complaint being signed both by the relator and such attorney, and duly sworn to by the former, is sufficient, as against a general demurrer to the bill, to indicate a selection by the relator of that attorney.

Second: We now turn to a consideration of the constitutionality of Sec. 3223, *et seq., supra,* in the respects questioned by appellants.

That the provisions of the statutes last mentioned operate to deprive defendants of an organic right to trial by jury in such cases or to deprive them of property without due process of law are questions largely, if not entirely, settled by this Court contrary to appellants' contention.

In Nelson v. State, *supra,* this Court said:

"The constitutional validity of the statute (Sec. 3223, *et seq.*) is challenged upon the grounds that it denies to defendant the right of trial by jury and operates to deprive him of property without due process of law, but it is clear that, as applied to the facts of this case, the statute does not offend against either of the constitutional provisions invoked by defendant."

If the acts herein complained of constitute gambling, or the keeping of a place or premises as a place where games of chance are carried on in violation of law, there is no

fundamental distinction in *principle* between the facts in the Nelson case, *supra,* and those involved in this case. Though there is a wide dissimilarity in the *nature* of the nuisance complained of in the two cases, each involves the commission of acts which the State, in the exercise of its existing and recognized authority, may declare to be a public nuisance and suppress them as such.

Frequent and conclusive adjudications upon the constitutional questions involved appear to be found in another class of cases identical in *principle* with the case under consideration.  We refer to the numerous cases brought under Sections 22 and 23, Title 2, of the National Prohibition Act, and similar State statutes, commonly referred to as the injunction provisions.

The pioneer in that class of cases, and one regarded as. the judicial foundation of the principles under consideration, as applied to cases of this general nature, is Mugler v. Kansas, 123 U. S. 623; 31 Law Ed.. 205.  That case disposed of three distinct cases, two of them criminal prosecutions, and the third a civil proceeding to abate by injunction an alleged nuisance maintained by the defendant and consisting of the keeping of a place for the sale of intoxicating liquor in violation of a statute of the State of Kansas prohibiting the manufacture and sale of intoxicating liquors. That statute (Sec. 13) further declares all places where the statute was violated to be common nuisances, subjected the owner or operator of such places to criminal prosecution and punishment, and authorized the Attorney General, County Attorney or any citizen of the county where such nuisance existed to maintain an action in the name of the State to abate and perpetually enjoin the same.  The striking similarity between that statute and our statutes under consideration is readily apparent.

Upon the question of the defendant's right to trial by

jury, it was said by the Supreme Court of the United States in Mugler v. Kansas, *supra,* speaking with reference to the Kansas statute:

"As to the objection that the statute makes no provision for a jury trial in cases like this one, it is sufficient to say that such a mode of trial is not required in suits in equity brought to abate a public nuisance."

See also Eilenbecker v. United States, 134 U. S. 31; 33 Law Ed. 801, construing an Iowa statute similar to ours, with respect to the right of defendant to a trial by jury.

This principle was again recently enunciated by the United States Circuit Court of Appeals (5th Circuit) in Penapolis v. United States, 3 Fed. (2nd) 722, where the question was thus disposed of:

"The objection that Section 22 (the injunctive Section of the Volstead Act) is unconstitutional because it denies the right of trial by jury, and authorizes in the first instance a suit in equity to abate a nuisance, is not well founded." Citing Mugler v. Kansas, *supra.*

See also: Lewinsohn v. U. S. (C. C. A.), 278 Fed. 421; State v. Ryder, 147 N. W. Rep. 953; 5 A. L. R. 1449; State v. Linker, 47 Pac. Rep. 572; State v. Thomas, 86 Pac. Rep. 502; Gragg v. State, 175 Pac. Rep. 201; Gregg v. People, 176 Pac. Rep. 483; Fulton v. State, 54 South. Rep. 688; and see the extensive treatment of the subject in the note appended to Hedden v. Hand, 5 A. L. R. 1463, 1480, and the note appended to King v. Com., 238 S. W. Rep. 373; 22 A. L. R. 535; see also 6 R. C. L. 458; 20 R. C. L. 484, and cases cited; State v. Gilbert, 147 N. W. Rep. 953; State v. Wagener, 80 N. W. Rep. 633; 46 L. R. A. 442.

We refer again to this subject in a subsequent portion of this opinion.

The constitutional questions involving due process, equal protection, and confiscation of property are so closely

related in the situation before us we will group them together in our discussion.

Again adverting to cases dealing with those questions under analogous statutes prohibiting the manufacture and sale of intoxicating liquors, we find upon the question of due process, in Mugler v. Kansas, *supra*, the following.

"Equally untenable is the proposition that proceedings in equity for the purpose indicated in the 13th Section of the statutes are inconsistent with due process law."

The statute referred to is the Kansas statute, the Thirteenth Section of which authorizes a proceeding by injunction, identical with the proceeding now under consideration, to abate as nuisances places where intoxicating liquors are unlawfully sold. See also Lewinsohn v. U. S. (C. C. A.), 278 Fed. 421.

As we shall presently see, the abatement by injunction of public nuisances of the character under consideration is a legitimate subject of equity jurisdiction in this State. The procedure prescribed by Sec. 3223, *et seq.*, affords full opportunity for notice and an opportunity to be heard in a court of competent jurisdiction. The Court is not required to issue an injunction simply because one is asked, or because the charge is made that a public nuisance is maintained in violation of law. In the first place, the suit must be brought in the county where the alleged nuisance is maintained. Next, Sec. 3224, *supra*, provides:

"In such action the court, judge or court commissioner before whom the bill may be brought may upon proper proof being made, allow a temporary writ of injunction without bond, if it shall appear to the satisfaction of the court or judge or commissioner by evidence or by affidavit that a temporary injunction shall issue. At least three days' notice in writing shall be given defendant or

defendants of the time and place of application for said temporary injunction.''

Thus we see that the statute authorizes the Court to proceed only upon reasonable notice, and leaves the Court at liberty to give full effect to the principle that an injunction will not be granted to restrain a nuisance save upon clear and satisfactory evidence that one exists. The question for determination is—not whether a place kept and maintained for purposes forbidden by statute *constitutes* a nuisance—that fact having been lawfully determined by the Legislature—but whether the place in question was so kept and maintained. See Mugler v. Kansas, *supra*. If such proof is not sufficient, the Court can refuse an injunction. This view is fully supported by many cases, amongst which are: State v. Marshall (Miss.), 56 South. Rep. 792; State v. Ryder, 147 N. W. Rep. 953; 5 A. L. R. 1449; Fulton v. State, 54 South. Rep. 688; State v. Wheeler, 155 N. W. Rep. 90; State v. Fanning, 147 N. W. Rep. 215, affirmed on rehearing 149 N. W. 413; State v. Stoughton Club, 153 N. W. Rep. 93; State v. Leicht, 29 N. W. Rep. 327; State v. Jordon, 34 N. W. Rep. 385; Dowda v. State, 83 South. Rep. 324; Bunkley v. Com., 108 S. E. Rep. 1; and cases cited in 22 A. L. R. 545.

Upon the question of whether or not such procedure constitutes a taking of private property for public use without just compensation, it is further held in the leading case of Mugler v. Kansas, *supra*:

''Acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though these circumstances may impair its use, do not constitute a taking within the meaning of the constitutional provision, or entitle the owner of such property to compensation from the State or its agents, or give him any right of action * * *. The exercise of the police

power by the destruction of property which is itself a public nuisance, or the prohibition of its use in a particular way, whereby its value becomes depreciated, is very different from taking property for public use, or from depriving a person of his property without due process of law. In the one case, a nuisance only is abated; in the other, unoffending property is taken away from an innocent owner."

It is therefore apparent that the procedure authorized by Sec. 3223, *et seq.*, operates—not to deprive an owner of his property in the constitutional sense—but to suppress an unlawful use of that property in a manner declared by law to be a nuisance, and though such action may impair the value of the property, it is not for that reason obnoxious to constitutional guaranties. In *re*: Seven Barrels of Wine, 79 Fla. 1, text 14, 83 South. Rep. 627; see also: Hamilton v. Kentucky Distilleries, 261 U. S. 157; 64 L. Ed. 200; Ruppert v. Caffey, 251 U. S. 264; 64 Law. Ed. 296; Samuels v. McCurdy, 267 U. S. 188; 69 Law. Ed. 570; State v. Lane, 147 N. W. Rep. 951.

Nor can it be said that the procedure deprives appellants of the equal protection of the law. That Sections 5624, 5499, and 5514, *supra,* are based upon reasonable legislative classifications of subject matter is not questioned. Each of these Sections defines offenses against the laws of Florida. Sec. 3223, *et seq.* and 5639, *supra,* provide that places where Secs. 5624, 5499 and 5514 are violated are public nuisances and, as such, may be abated by injunction. The procedure authorized by Sections 3223, et seq., and 5639, *supra,* is potentially equal, uniform and general in its operation and effect upon all persons embraced within the affected classes. The authorized procedure is available, not only to the public officers named, but to any citizen of a county wherein such nuisance is kept and

434    SUPREME COURT OF FLORIDA.

Pompano Horse, Club et al. v. State of Florida—Opinion of Court.

maintained. The fact that the injunctive provisions of the statute may be invoked in one county, and not in another, neither impairs nor destroys the uniformity of the statute, in a constitutional sense, so as to affect its validity under the equal protection clause. See: Dent v. West Virginia, 129 U. S. 114; 32 Law. Ed. 623; A. C. L. v. Coachman, 59 Fla. 130, 52 South. Rep. 377; Montgomery v. State, 53 Fla. 115, 42 South. Rep. 894; Davis v. Fla. Power Co., 64 Fla. 246, 60 South. Rep. 759; State v. Allen, 83 Fla. 214, 91 South. Rep. 104; State v. Hogan, 58 N. E. Rep. 572; 52 L. R. A. 863; 6 R. C. L. 369, *et seq.; 12* C. J. *1158, et seq.;* Grainger v. Douglas Park Jockey Club (C. C. A.), 148 Fed. 513; 8 Ann. Cas. 997, reversing *idem,* 146 Fed. 414.

Appellants also contend that the statutes referred to violate the organic provision against double jeopardy, the theory being that if the injunction is not obeyed, appellants might be punished for contempt, and also for the commission of the crime itself, the same criminal act thereby giving rise to both punishments. But that contention has been negatived by many courts. Section 12 of the Declaration of Rights, Constitution of Florida, provides: "No person shall be subject to be twice put in jeopardy for the same offense * * *." It is true that if appellants commit the act which is enjoined, and such act be also a violation of the penal laws of the State, appellants may be punished, under the statutes, for the contempt and also for the violation of the criminal law. But these are not the "same offense." In the former case, he is punished for a violation of the orders of the Court, and in the latter for an offense "against the peace and dignity of the State." One who makes an assault in the presence of the Court in such a manner as to constitute a contempt of Court is punishable not only for the contempt but also for the assault. *Ex parte:*

Allison, 90 S. W. Rep. 870; 2 L. R. A. (N. S.) 1111. See also: *Ex rel.* Duensing v. Roby, 41 N. E. Rep. 145; 33 L. R. A. 213; Lewinsohn v. U. S. (C. C. A.), 278 Fed. 421; *In re*: Debs, 158 U. S. 564; 39 Law Ed. 1092; *In re*: Chapman, 166 U. S. 661; 41 Law. Ed. 1154; Mobile v. L. & N. R. R. Co., 4 South. Rep. 106.

We now consider whether the procedure complained of is a proper subject of equitable jurisdiction.

The Constitution of Florida (Art. 5, Sec. 11) provides that:

"The Circuit Courts shall have exclusive original jurisdiction in all cases in equity * * * and original jurisdiction * * * of such other matters as the Legislature may provide. * * * The Circuit Courts and judges shall have power to issue writs of * * * injunction * * *, and all writs proper and necessary to the complete exercise of their jurisdiction."

Again quoting from Mugler v. Kansas, *supra*:

"In regard to public nuisances, Mr. Justice Story says, 'The jurisdiction of Courts of Equity seems to be of a very ancient date, and has been distinctly traced back to the reign of Queen Elizabeth. The jurisdiction is applicable not only to public nuisances, strictly so called, but also to purprestures upon public rights and property * * *. In case of public nuisances, properly so called, an indictment lies to abate them, and to punish the offenders. But an information, also, lies in equity to redress the grievance by way of injunction.' 2 Story's Eq., Secs. 921, 922 * * * They (Court's of Equity) cannot only prevent nuisances that are threatened, and before irreparable mischief ensues, but (may) arrest or abate those in progress, and, by perpetual injunction, protect the public against them in the future; whereas courts of law can only reach existing nuisances, leaving future acts to be the subject of new prosecu-

tions or proceedings.  This is a salutary jurisdiction, espe-
cially where a nuisance affects the health, morals or safety
of the community.  Though not frequently exercised, the
power undoubtedly exists in Courts of Equity thus to pro-
tect the public against injury.''

With respect to the last statement as to the infrequent
exercise of this jurisdiction by Courts of Equity, it should
be borne in mind that Mugler v. Kansas, *supra*, was
decided in the year 1887.  The fact that equity juris-
diction clearly existed for the purpose stated during
the reign of Queen Elizabeth, A. D. 1558, to 1603,
would seem to be a conclusive answer to appellants'
contention that the present exercise of that jurisdic-
tion invades a constitutional right to trial by jury.
The first Constitution of Florida, securing the right, was
adopted in the year 1839, and became effective in the year
1845.  Wiggins v. Williams, 36 Fla. 637, 18 South. Rep.
859, text 863.  This Court has pointed out on several occa-
sions that Sec. 3 of the Declaration of Rights of the Con-
stitution of Florida, providing that ''the right of trial by
jury shall be secure to all, and remain inviolate forever,''
though it is a justly prized and jealously guarded guaranty,
was never intended to extend the right of jury trial, but
merely *secures* it in cases in which it was a matter of right
before the adoption of the Constitution.  State v. Parker,
87 Fla. 181, 100 South. Rep. 260.

Article 3, Sec. 2, clause 3, of the Federal Constitution
(effective March 4, 1789), and providing: ''The trial of
all crimes, except in cases of impeachment, shall be by
jury,'' relates to trials in the Federal Courts.  It is there-
for not applicable to the procedure prescribed by Sec. 3223,
*et seq., supra,* and if it was, the statutory procedure would
not be obnoxious to the quoted clause of the Federal Con-
stitution, because the former relates to the abatement of a

public nuisance by civil procedure, and is in no sense of the word a trial for crime; the issuance of an equitable injunction in such cases having none of the attributes and being followed by none of the penalties pertaining to a conviction of crime.

In this State, and generally, Courts of Equity have no jurisdiction to enjoin the commission of crime, nor will equity act to prevent an illegal act merely because it is illegal.  In such cases resort must be had to the Criminal Courts, which possess ample power to punish the wrongdoer.  See State v. Canty, 105 S. W. Rep. 1078; 15 L. R. A. (N. S.) 747; Com. v. Respass, 115 S. W. Rep. 1131; 21 L. R. A. (N. S.) 836; Meredith v. Triple Island Gunning Club, 38 L. R. A. (N. S.) 287; 32 C. J. 276; Com. v. Smith, 109 Atl. Rep. 786; 9 A. L. R. 922 (Sunday Laws).

But "there is a manifest distinction between enjoining an individual from committing a crime and enjoining the owner of property, or its possessor, from allowing his property to injure others.  *  *  *  A Court of Chancery will not restrain personal conduct, but it will restrain the unlawful use of property  *  *  *.  In the latter case the Chancellor only regulates the use which may be made of the property, restraining the defendants from so using their property as to make it a nuisance to others.  The remedy in equity is purely preventive.  The Chancellor does not punish the defendant for what he has done. That is left to the criminal court." Repass v. Com., 102 S. W. Rep. 331; Com. v. Respass, 115 S. W. Rep. 1131; 21 L. R. A. (N. S.) 836.

Where there is legislation authorizing courts of equity to enjoin acts constituting, and duly declared to be, a public nuisance, which acts at the same time are declared to be criminal, the best considered cases uphold the jurisdiction of Courts of Equity to abate such nuisances by injunction.

The State possesses the undoubted right to prohibit gambling and the keeping or operation of gaming places or devices, and we do not doubt the authority of the State to declare that any place kept and maintained for the purpose of gambling and the operation of gambling devices shall be deemed a public nuisance, and, at the same time, to provide for the criminal prosecution of the offenders. "One is a proceeding against the property used for forbidden purposes, while the other is for the punishment of the offender." Mugler v. Kansas, *supra*.

The power of the Legislature to extend the bounds of equity jurisdiction as prescribed by Section 3223, *et seq.*, if indeed it be an extension thereof, is well established. The contention to the contrary probably rests upon a disregard of the distinction between a proceeding to abate a nuisance, which looks only to the property, a particular use of which constitutes the nuisance, and a proceeding to punish an offender for the commission of a crime "These two proceedings are entirely unlike. The latter is conducted under the provisions of the criminal law, and deals only with the person who has violated the law. The former is governed by the rules which relate to property, and its only connection with persons is through the property in which they may be interested. The fact that keeping a nuisance is also a crime does not deprive a court of equity of the power to abate such nuisance." Carleton v. Rugg, 22 N. E. Rep. 55; 5 L. R. A. 193; State v. Ryder, 147 N. W. Rep. 953; 5 A. L. R. 1449; Gregg v. People, 176 Pac. Rep. 483. See also Murphy v. U. S., — U. S. —; 71 Law. Ed. 255; 47 Sup. Ct. Rep. 218; decided Dec. 6, 1926.

When the statute has properly declared the premises where gambling is carried on to be a common nuisance, as was said in Penapolis v. U. S., *supra*, "The government has the right to abate that nuisance by a suit in equity; not-

withstanding it at the same time had the further right to resort to criminal prosecution. It may resort to either method, or both, at its discretion." And as was said in U. S. v. Schwartz, 1 Fed. (2nd) 718, speaking with reference to the Volstead Act: "The fact that Congress provided a double remedy against such nuisances, making them criminal misdemeanors, and, if continuous and recurrent, subject to abatement by equity proceedings, does not seem to involve any unconstitutional criminal jurisdiction by a Court of Equity."

If this power exists in the Federal Government, a government of delegated powers, certainly it inheres in a State government, a government of general reserved powers. See also: Carleton v. Rugg, 149 Mass. 550; 5 L. R. A. 195; Chase v. Proprietor's Revere House, 122 N. E. Rep. 162; Lewinsohn v. U. S. (C. C. A.), 278 Fed. 421.

And as it was further said in Eilenbacker v. District Court, 134 U. S. 31, 33 Law. Ed. 801 affirming Eilenbecker v. District Court, 28 N. W. 551." * * * It appears to us that all the powers of the Court, whether at common law or in chancery, may be called into operation by a legislative body for the purpose of suppressing this objectionable traffic (the liquor traffic) ; and we know of no hindrance in the Constitution of the United States to the form of proceedings or to the Court in which this remedy shall be had. Certainly it seems to us to be quite as wise to use the processes of law and the powers of the Court to prevent the evil as to punish the offense as a crime after it has been committed." See also U. S. v. Schwartz, 1 Fed. (2nd) 718.

The power of a Court of Equity to abate a public nuisance where no property rights of the complainant are involved, even in the absence of a statute, we find affirmed in Mugler v. Kansas, *supra;* State v. Ryder, 147 N. W. Rep. 953;

5 A. L. R. 1449; People v. Smith, 114 N. E. Rep. 31; L. R. A. 1917B 1075; State v. Paterson, 37 S. W. Rep. 478; *Ex parte*: Allison, 90 S. W. Rep. 492; 2 L. R. A. (N. S.) 1111; Walker v. McNelly, 48 S. E. Rep. 718; Columbian Athletic Club v. State, 40 N. E. Rep. 914; 28 L. R. A. 727, and other cases, although there is some difference of opinion as to the power of such Court to grant injunctive relief in the absence of statute. Assuming, however, that in the absence of a statute a Court of Equity will not abate or enjoin a public nuisance where no property right is involved, it does not necessarily follow that a statute conferring such jurisdiction is invalid. Heddon v. Hand, 107 Atl. Rep. 285; 5 A. L. R. 1463, and exhaustive note. Where the State is concerned, the presence of actual injury is not an essential element of or prerequisite to chancery jurisdiction. Littleton v. Fritz, 22 N. W. Rep. 641; State v. Marshall, 56 South. Rep. 792; Ann. Cas. 1914A 434, wherein it is said: "When a business is a public nuisance, no matter how it gets to be such, whether inherently so or made so by law, the Court of chancery has power to enjoin." See also: State v. Canty, 105 S. W. Rep. 1078; 15 L. R. A. (N. S.) 747; Davis v. Auld, 53 Atl. Rep. 118; *Ex parte* Allison, 90 S. W. Rep. 870; 2 L. R. A. (N. S.) 1111; 20 R. C. L. 474; Respass v. Com., 115 S. W. Rep. 1131; 21 L. R. A. (N. S.) 836; State v. Noyes, 30 N. H. 279; Jones v. State, 132 Pac. Rep. 319; 44 L. R. A. (N. S.) 161 Ann. Cas. 1915C 1031; 20 R. C. L. 386; 14 R. C. L. 379, and cases cited in note 11; also *idem* page 380; Ehrlick v. State, 64 S. E. 935; 23 L. R. A. (N. S.) 691; State v. Gilbert, 147 N. W. Rep. 953; State v. Wagener, 80 N. W. 633; 46 L. R. A. 442.

Even at the risk of some tedium, we quote finally from 5 Pomeroy's Equity Jurisprudence (2nd Ed.), Section 1893:

"As a public nuisance concerns the public generally, it is the duty of the government to take measures to abate or enjoin it. Hence it follows that the government can obtain an injunction restraining a public nuisance, without showing any property right in itself. The duty of protecting the property right of all its citizens is sufficient warranty in issuing the injunction. Therefore, wherever a public nuisance is shown, equity must enjoin it at the suit of the government. Every place where a public statute is openly, publicly, repeatedly, continuously, persistently and intentionally violated, is a public nuisance."

It does not lie within the legislative power to arbitrarily or capriciously declare any or every act a nuisance. State v. Saunders, 25 Atl. Rep. 588; 18 L. R. A. 646. "It does not at all follow that every statute enacted ostensibly for the promotion of these ends (the preservation of the public health, safety and morals) is to be accepted as a legitimate exertion of the police power of the State". Mugler v. Kansas, *supra*. It rests, however, very largely within the province of the legislative body, to prescribe what shall constitute a nuisance, and in defining nuisances, the Legislature may rightfully exercise a broad and extended discretion. Lawton v. Steel, 152 U. S. 133; 38 Law. Ed. 385; 20 R. C. L. 404, and cases cited. It may make that a nuisance which was not one at common law. U. S. v. Reisenweber (C. C. A.), 288 Fed. 520, 524. That being true, certainly the legislative body, in the rightful exercise of its power to preserve and protect the public morals and safety of its citizens may lawfully denounce and prohibit gambling as a criminal offense, and at the same time declare to be public nuisances, and abatable by injunction, places or premises which are resorted to or kept for the purpose of gambling or of staking, betting or wagering money or other thing of value upon the result of horse races. It is held by the courts with great unanimity that such acts are

subversive of the public morals, and their suppression a lawful exercise of the recognized authority of the State. That gaming and gambling might be conducted in such a manner as to constitute a nuisance was probably recognized even by the early common law. King v. Medler, 2 Shower, 36; King v. Dixon, 10 Mod. 335; State v. Vaughn, 98 S. W. Rep. 685; 7 L. R. A. (N. S.) 899; People v. Wietoff, 16 N. W. Rep. 442; Mullen v. Mosely, 90 Pac. Rep. 986; 13 Ann. Cas. 450; 12 L. R. A. (N. S.) 394; 20 R. C. L. 404 (23); Thrower v. State, 45 S. E. Rep. 126; McClean v. State, 9 Atl. Rep. 681; Bollinger v. Com. 35 S. W. Rep. 553. See also the Statute of Anne, 9 Anne, Chap. 14, adopted in this State as part of the common law of England; Braxton v. Pye, 2 Wils. 309; Woolf v. Hamilton, 2 Q. B. 337; Hyams v. King Stuart, 2 K. B. 696.

By the decided weight of authority, the maintenance of a pool room or turf exchange where persons congregate for the purpose of making bets and wagers on horse races run in other states or countries is a public nuisance, and abatable as such by injunction under statutes similar to our own. Jones v. State, 132 Pac. Rep. 319; Ann. Cas. 1915C, 1031, 1033; 44 L. R. A. (N. S.) 161; State v. Vaughn, 98 S. W. Rep. 685; 7 L. R. A. (N. S.) 899; 11 Ann. Cas. 277; Bollinger v. Com., 35 S. W. Rep. 553; Cawein v. Com., 61 S. W. Rep. 275; Ehrlick v. Com., 103 S. W. Rep. 289; 10 L. R. A. (N. S.) 995; Respass v. Com., 102 S. W. Rep. 331, and the many other cases cited in Ann. Cas. 1915C, 1033. See also: James v. State, 112 Pac. Rep. 944, 34 L. R. A. (N. S.) 515; Com. v. Respass, 115 S. W. Rep. 1131; 21 L. R. A. (N. S.) 836, and the many cases cited in the note thereto; State v. Ayers, 88 Pac. Rep. 653; 10 L. R. A. (N. S.) 992; Swigart v. People, 50 Ill. App. 181.

See also: Miller v. U. S., 6 App. (D. C.) 6, in which it is held that "book making" or pool selling located near a race track is a common nuisance within the meaning

VOL. 93, JANUARY TERM, 1927.          443

Pompano Horse Club et al. v. State of Florida—Opinion of Court.

of the Act of Congress of January 31, 1883, passed to suppress gambling in the District of Columbia.

What has been said in the cases just cited with respect to the suppression by injunction, as nuisances, of premises where gambling on horse races run at distant points is engaged in, is of course equally applicable to premises used for such purpose when located within the enclosure of the race track.

Third. Having found no constitutional objection to the statutes under consideration, there now remains for consideration the questions whether or not the plan of operation followed by defendants in the sale of certificates, depending for their cashable value upon the result of a horse race constitutes either (1) engaging in a "game of chance" in violation of law as denounced by Sec 5639, or (2) "gambling", as defined and denounced by Sec. 5514, and consisting of receiving or knowingly becoming the custodian or depositary of money or other thing of value staked, bet or wagered, or offered for the purpose of being staked, bet or wagered, by or for any other person upon the result of any trial or contest of skill, speed or power of endurance of man or beast; and (3) if the plan of operation of the defendants falls within the latter difinition of gambling, then are the injunctional provisions of Sec. 3223, et seq., applicable to the owners or operators of premises whereon the offenses denounced by Sec. 5514, supra, are committed.

According to the testimony, the method pursued in the purchase, sale and redemption of certificates, in connection with the races conducted by appellants, is as follows:

In every race run there are more than three horses, but of those entered in the race, only three can win. In each race, there are three so-called "purses" or "prizes," given, respectively, to the horse winning first, second and third place in the race. Any adult person who desires to do so

may place with appellant a stated sum of money to be included, togteher with sums so placed by other persons, within a gross sum called the ''purse'' in a given race. The depositor receives a ticket or certificate, showing the amount deposited, the number of the horse selected by him to win, and what place in the race the certificate holder has chosen his horse to win, that is, whether first, second or third. The so-called ''purse'' or ''prize,'' which is later distributed among the winning certificate holders, is made up of the money so paid in by purchasers of the certificates. There is a categorical statement in the testimony that a portion of the ''purse'' is contributed by the horse club, but the manner in which that is done is not clear. The money so deposited upon each race is segregated or ''pooled,'' with reference to that particular race. About 5% thereof is retained by the horse club. By reason of having procured a certificate in the manner stated, the holder thereof is entitled to share in the proportionate part of the remainder of such money, provided the horse selected by him wins that race according to the terms of his certificate; otherwise he loses the money so deposited. The printed certificate provides that such money shall be awarded to the ''owner of the horse'' as a ''purse, prize or premium,'' but according to the oral testimony the payment is made directly and proportionately to the winning certificate holders, and not to the owner of the horse. The result of the transaction between the certificate holders and appellant is, that those who purchase certificates on the winning horses receive from the pooled money more than they contributed thereto, while all others lose what they have contributed, the money so contributed by the losers being proportionately divided among the winners, in any given race, in accordance with the terms of the certificate. The winning certificate holders, and the rela-

tive amount to be distributed to each, are determined by the order in which the horses finish the race. In this manner the certificate holders *themselves* furnish the money to be later won by some of them, and lost by others, depending on the result of the race. Thus, as we said in Reinmiller v. State, decided at this term: "Whoever goes to the booth and buys one of these so-called 'investment' certificates thereby stakes the price of the certificate, to-wit., $2.00, that the dog cn which he has bought the ticket will win the race. He has staked that $2.00 against a proportionate part of whatever amount others may in like manner place on some other dog in that same race."

The evidence further shows that facilities for carrying on these transactions are furnished by the corporate appellant upon the premises and within the enclosure where the races are carried on, and that large numbers of persons resort to these premises and buy certificates in the manner and for the purpose stated. The money representing the purchase price of all certificates is paid in to agents of the appellant. When the race is run, these agents quickly calculate the gross amount of the percentage to be retained by appellant, and the proportionate sums to be paid to holders of winning certificates. The latter sums are paid out by other agents of the corporate appellant as the winning certificates are presented at booths or windows furnished by appellant for that purpose. One witness testified that upon one $2.00 certificate purchased by him in a given race he received back $30.00 because he picked the winning horse, while in other races in which he purchased similar certificates, but did not pick the winning horse, he received nothing. Another witness testified that on one $2.00 certificate in a race in which he picked the winning horse he received back $9.00, while in other races in which he did not pick the winning horse, he received nothing. Other witnesses testified that they bought similar tickets

446 SUPREME COURT OF FLORIDA.

Pompano Horse Club et al. v. State of Florida—Opinion of Court.

or certificates, but having failed each time to pick the winning horse, they received nothing. All of the transactions mentioned were conducted with agents of appellant, on the premises described in the bill of complaint.

The certificates or tickets spoken of are not tickets of admission to the grounds for the purpose of viewing the races. Other appropriate admission tickets are sold for that purpose. The tickets under consideration have reference only to the amount of money the holders thereof will win or lose on the outcome of the particular race to which the certificates are applicable.

Whether or not horse racing is a "game" is a question upon which there is some conflict of judicial opinion. This difference emanates largely from differing statutory provisions. Some courts take the view that it is a "sport" as distinguished from a "game," and that if it is a "game" at all, it is a game of "skill" and not a game of "chance." See: State v. Rorie, 23 Ark. 726. It was conceded, however, in the subsequent Arkansas case of State v. Vaughan, 98 S. W. Rep. 685, 7 L. R. A. (N. S.) 899, that the weight of authority is to the contrary, the court retaining, in State v. Vaughan, the view expressed in the former case of State v. Rorie, because it was a decided principle of long standing in that State. Expressing the same view are Cheek v. Com., 79 Ky. 359; Louisville v. Wehmhoff, 76 S. W. Rep. 876; idem, 79 S. W. Rep. 201; Harless v. Adams, 1 Morr. (Iowa) 169; State v. Hayden, 31 Mo. 35; McDevitt v. Thomas, 114 S. W. Rep. 273. See also the very recent case, Utah State Fair Ass'n. v. Green, 249 Pac. Rep. 1016.

It is unnecessary, however, for us to decide that question. We are not concerned, primarily, with the matter of horse racing. The question before us is whether or not the buying, selling and redeeming of certificates, in the manner and

for the purpose stated, constitutes gambling, or a game of chance. Regardless of whether horse racing, within itself, is a "game" or a "sport," or if a game, whether it be one of "skill" or of "chance,"—when a group of persons, each of whom has contributed money to a common fund and received a ticket or certificate representing such contribution, adopt a horse race, the result of which is uncertain, as a means of determining, *by chance*, which members of the group have won and which have lost upon a re-division of that fund, each contributor having selected a stated horse to win such race, the redeemable value of the certificates so obtained and held by the contributors to such fund being varied or affected by the result of such race, so that the value of some is enhanced, while that of others is reduced or destroyed, the original purchase price of all having been the same, those who chose the winning horses being paid from the fund so accumulated more than they contributed thereto, by dividing amongst them the money contributed by those who chose losing horses and who therefore receive nothing, *that process* becomes a "game of chance," and those who buy, sell, or redeem such certificates, for the purposes and in the manner hereinabove stated, are "engaged" in such game within the contemplation of Sec. 5639, *supra*. In the plan before us, the corporate appellant is a custodian or depositary of money staked, bet or wagered on the result of a contest of speed between horses and the skill of their jockeys, in violation of Sec. 5514, *supra*. See: McBriden v. State, 39 Fla. 442, 22 South. Rep. 711. See also: *In re*: Opinion of Justices, 63 Atl. Rep. 505; Miller v. U. S., 6 App. (D. C.) 6; Com. v. Simonds, 3 Ky. L. Rep. 380; Cheek v. Com., 37 S. W. Rep. 152; Thrower v. State, 45 S. E. Rep. 126; People v. Weithoff, 16 N. W. Rep. 442; Ellis v. Beale, 18 Mann 337; 36 Am. Dec. 726; People v. McCue, 83 N. Y. S. 1088, affirmed 70 N. E. Rep. 1104; Wade v. Deming, 9

Ind. 35; Shrepshire v. Glasscock, 4 Mo. 536; 31 Am. Rep. 189; James v. State, 113 Pac. Rep. 226; 33 L. R. A. (N. S.) 827, and cases cited. Cheeves v. State, 114 Pac. Rep. 1125; see also cases cited in the note to State v. Vaughn, 7. L. R. A. (N. S.) 899; 14 Am. & Eng. Ency. Law 682; 27 C. J. 973, 1052; Ingham on the Law of Animals, p. 362; and see also this exact situation as applied to baseball games, Com. v. Sullivan, 105 N. E. Rep. 895; Ann. Cas. 1916-B, 98.

Such games of chance, when the result depends upon the outcome of a horse race, is gambling, as we shall presently see, and, being contrary to Sec. 5514, is "in violation of law." The keeping of premises where such practices are carried on is a violation of Sec. 5499, and abatable by injunction under the provisions of Sec. 3223, *et seq.*, being a place "where any (a) law of the State of Florida is violated," in contemplation of Sec. 5639. See People v. Weithoff, *supra;* State v. Shanklin, 97 Pac. Rep. 969; State v. Stripling, 21 South. Rep. 409; 36 L. R. A. 81.

That the game of chance just referred to may not have, or be susceptible of receiving, a particular name is immaterial so long as the elements constituting the offense are present. State v. Ayers, 88 Pac. Rep. 653; 10 L. R. A. (N. S.) 992; Anderson v. State, 58 S. E. Rep. 401. It is commonly referred to, however, as "Pari mutual betting." James v. State, 63 Md. 242, 248; 27 C. J. 976.

That the plan of operation of the defendants in selling and redeeming such certificates, and in retaining a portion of the purchase price thereof, as hereinabove set out, is gambling, in violation of Sec. 5514, has been fully settled by this Court in Reinmiller v. State, decided at this term. See also: McBride v. State, 39 Fla. 442, 22 South. Rep. 711. Under Sec. 5514, such practices would be equally as objectionable if conducted at a place remote from the scene of the race. Proximity to the race course is material only

for the purpose of determining the *situs* of the nuisance to be abated.   See. Exchange Kennel Club v. Daugherty, 281 S. W. Rep. 826; People v. Weithoff, 16 N. W. Rep. 442; 27 C. J. 978 (56).

The case of Johns v. Smith, 77 Fla. 398, 81 South. Rep. 514, cited by appellants, is not at all analogous to the case now before us.   In Johns v. Smith the owner of a horse, by what appears to be a valid and *bona fide* lease, leased his horse to another, together with the right to enter said horse in a stated race, and also assigned to the lessee the rights of the lessor in and to any "purses, prizes or premiums that may be given or awarded by said association (under the management of which the races were conducted) to the said horse or his owner in said race."   The lessee assigned his rights under the lease to the plaintiff.   The horse in question having won the race, the lessee collected the purse, prize or premium from the association, and declined to pay it over to his assignee, the plaintiff, who thereupon sued and recovered the same.   The purse, prize or premium in that case was contributed "by said association, a person other than the owner of said horse," but it does not appear that the donor of said purse, prize or premium stood to gain back any part of the sum so offered, or that, depending on the result of the race, the donor stood to gain back more than it had contributed.   For aught appearing in that case to the contrary, the sum sued for was nothing more than a purse, prize or premium awarded by an association conducting horse races to the winning horse in a given race, the donor not participating in the fruits of such race, and this Court held in effect that such practice did not violate our statute forbidding "stakes, bets or wagers" upon the result of any trial or contest of skill. The transaction possessed none of the essential elements of a "pool," in which some or the donors would receive

back more than they contributed, while others would lose their contributions. A "purse, prize or premium" is ordinarily some valuable thing offered for the winner of a contest, *for which the person offering it does not compete,* and stands no chance of gaining back the thing offered, or any part thereof, 27 C. J. 1051. Such a transaction is therefore not a "stake, bet or wager." Toomey v. Penwell, (1926), 245 Pac. Rep. 943; 45 A. L. R. 993; Hankins v. Ottinger, 115 Calif. 454; 40 L. R. A. 76; Misner v. Knabb, 9 Pac. 65; Alvord v. Smith, 83 Ind. 59; People v. Fallon, 152 N. Y. 12; 37 L. R. A. 227. A "purse, prize or premium" differs from a "stake, bet or wager" in that in the former the donor or person offering the same has no chance of gaining back the thing offered but, if he abides by his offer, he must lose it, whereas in the latter each party interested therein has a chance of gain and suffers a risk of loss. Toomey v. Penwell, (1926), 245 Pac. Rep. 943; 45 A. L. R. 993; Harris v. White, 81 N. Y. 532; Hankins v. Ottinger, 47 Pac. Rep. 254; 40 L. R. A. 76; Morrison v. Bennett, 52 Pac. Rep. 553; 40 L. R. A. 158; Porter v. Day, 31 N. W. Rep. 259; 27 C. J. 976.

The latter phrase describes the situation now before us, Section 27 C. J. 976 (42); Com. v. Sullivan, 105 N. E. Rep. 895; Ann. Cas. 1916-B 98; Com. v. Watson, 27 N. E. Rep. 1003; Com. v. Clancy, 27 N. E. Rep. 1001; Com. v. Ferry, 15 N. E. Rep. 484; People v. McCue, 83 N. Y. S. 1088, affirmed 70 N. E. Rep. 1104.

Appellants further urge that the injunctional provisions of Sections 3223, *et seq.,* and Section 5639, are not available as against premises where violations of Sections 5514 and 5499 occur, because the former sections do not expressly mention the latter, and should not be construed as extending thereto. We agree with appellants that the general clause, "or any place where any law of the State of Flor-

ida is violated,'' found in Section 5639, should be construed *ejusden generis.* That section, after specifically mentioning the provisions of Section 5639 (relating to the preservation of public health and morals) further provides: ''Or any place or building where games of chance are engaged in in violation of law, or any place where any law of the State of Florida is violated, * * * are declared a nuisance, and * * * shall be abated as provided in'' Section 3223, *et seq.*

As we said in Children's Bootery v. Sutker, — Fla. —, 107 South. Rep. 345, 44 A. L. R. 698; ''Literally translated '*ejusdem generis*' means 'of the same kind or species.' * * * When an enumeration of specific things is followed by some more general word or phrase, such general word or phrase will usually be construed to refer to things of the same kind or species as those specifically enumerated. 19 C. J. 1255, and cases cited. But the rule does not necessarily require that the general provision be limited in its scope to the identical thing specifically named. So applied, the rule would render the subsequent general phrase entirely inoperative, and thereby violate another salutary rule of construction, namely, that every part of a statute should, if possible, be sustained and given appropriate effect.''

Applying that doctrine, the general provision of Section 5639 above set out, should be construed as if it had been written: ''or any place where any law of the State of Florida, of the same kind or species as those specifically mentioned, is violated,'' etc. It is evident that Sections 5499 and 5514, being laws providing for the protection of the public health and morals, are of the ''same kind or species'' as those specifically mentioned in Section 5639, namely, amongst others, ''any place or building where games of chance are engaged in in violation of law,'' so

that the injunctive provisions of Sections 3223, *et seq.*, and 5639, construed *ejusdem generis,* apply to the acts and situations described in Sections 5499 and 5514.

The orders appealed from are affirmed.

The supersedeas order heretofore entered herein is vacated.

WHITFIELD, TERRELL AND BROWN, J. J., concur.

ELLIS, C. J., AND BUFORD, J., dissent.

ELLIS, C. J., dissenting:

I am unable to agree with the majority of the Court in the conclusion reached in this case.

Lord Brcham said that the authority of the Bench would cease to have any weight at all if its decisions were unaccompanied with argument and explanation. If it is permissible to attempt an amplification of the thought of so high an authority, it might be added that the argument and explanation should rest upon maxims, rules and principles according to which we attempt to square our conduct and upon which our rights and duties are adjudicated. My difficulty in the present case arises from an inability to assent to the postulates underlying the argument in the majority opinion.

First. As a general rule Courts of Chancery deal only with matters of property and the maintenance of civil rights. This is true because equity affords no remedy where there is a full and adequate remedy at law and the process of the law courts is regarded as fully adequate. In this case no property right is involved and the analogy sought to be established between this case and a proceeding wherein a ''nuisance'' is sought to be abated is without authority in law or precedent. It rests upon a pyramid-

ing of suppositions, the original one being: that a nuisance may consist of immoral conduct or a violation of law. Upon that supposition is placed others, such as: betting on horse races is conduct denounced by the statute as criminal; that criminal conduct is a nuisance if the statute defines it as "gambling"; that the statute provides for enjoining one from "gambling" because it is a nuisance; that betting on a horse race is use of the race track, stand for spectators, paddocks, grounds and stables for illegal purposes.

A Court of Equity has no jurisdiction in matters criminal or immoral. It leaves the correction of these matters to the criminal courts. The remedy at law is presumed to be adequate, but if not so the relief must come from the law-making power and not from courts. People v. Condon, 102 Ill. App. 449; Cope v. Fair Association of Flora, 99 Ill. 489; People v. Prouty, 262 Ill. 218, 104 N. E. Rep. 387, 51 L. R. A. (N. S.) 1140, Ann. Cas. 1915B, 155.

To assume such a jurisdiction or to restrain or relieve against proceedings for the punishment of offenses is to invade the domain of the courts of common law and administrative department of the Government. Philadelphia Co. v. Stimson, 223 U. S. 605, 56 L. Ed. 570, 32 Sup. Ct. Rep. 340; Fitts v. McGhee, 172 U. S. 516, 43 L. Ed. 535, 19 Sup. Ct. Rep. 269; Harkrader v. Wadley, 172 U. S. 148, 43 L. Ed. 399, 19 Sup. Ct. Rep. 119.

The farthest limit to which the courts have gone in sustaining proceedings in equity to restrain criminal conduct is where under statutes which declare an act criminal and make the repetition of it a public nuisance and vest the courts with power to restrain it after conviction. It is doubtful if such a statute would be valid in this State under the provisions of our Constitution. Statutes of that character relate to the violation of the laws regulating or

prohibiting the liquor traffic. Eilenbecker v. District Court of Plymouth County, 134 U. S. 31, 33 L. Ed. 801, 10 Sup. Ct. Rep. 424; Mugler v. Kansas, 123 U. S. 623, 31 L. Ed. 205, 8 Sup. Ct. 273; State v. Ehrlick, 65 W. Va. 700, 64 S. E. Rep. 935, 23 L. R. A. (N. S.) 691.

Second. A Chancellor has no criminal jurisdiction. Something more than the threatened commission of an offense against the laws of the land is necessary to call into exercise the injunctive powers of the court. There must be some interference actual or threatened with property rights of a pecuniary nature. In re Debs, 158 U. S. 564, 39 L. Ed. 1092, 15 Sup. Ct. Rep. 900.

The charge as made in the bill is of a criminal nature. The bill actually charges crime, but the crime charged does not touch the enjoyment of property. The majority opinion, however, assumes that property rights are involved, viz.: the right to the use of the race tracks, grounds and buildings; but that is the defendant's property which his alleged conduct affects, if at all, and which is no injury to the rights of the public except as a moral or religious offense.

If there was material injury to others or the public in such use of the property, if by any process of reasoning betting on a horse race can be said to be use of property, then equity through its power to abate a nuisance has jurisdiction to abate and suppress the race track and the adjudication of guiltiness of a crime would be incidental; here it is primary.

Third. The bill in this case, stripped of all unnecessary words, charges the defendant, Pompano Horse Club, with two crimes: One a misdemeanor, the other a felony denounced by our statutes and sanctioned by penalties prescribed. The two offenses are "gambling" and "main-

taining a place for the purpose of gambling.'' The latter is a felony.

Fourth. No statute exists in this State authorizing a Court of Chancery specifically to enjoin the commission of crimes. Sections 3223-3227 inclusive, Revised General Statutes, provide for the abatement of nuisances such as are defined in Section 5639, Revised General Statutes. That section in terms refers to Sections 5624-5497, Revised General Statutes. Neither of these sections refer to Section 5514, Revised General Statutes, defining the crime of betting ''upon the result of any trial or contest of skill, speed or endurance of man or beast'', although Sections 3223 to 3227 and 5639, being Chapter 7367, Acts of 1917, were enacted six years after Chapter 6188 of 1911 was enacted and which was carried into the Revised General Statutes as Section 5514.

Fifth. Section 5497 defines the offense of vagrancy and by Section 5498 provides for its punishment as a crime. Section 5624 defines ''nuisances'' and provides a statutory proceeding at law for their removal and suppression. Section 5639 provides that the persons who maintain the places as described in Section 5624 or which are frequented by the persons described in Section 5497, or who maintain a place where ''games of chance are engaged in in violation of law or any place where any law of the State of Florida is violated'' shall be deemed ''guilty of a nuisance'' and the place be declared a nuisance and such ''persons, places, shall be abated and enjoined as provided in Article 19, Chapter 10, Title 3, Second Division of these Revised General Statutes''. That reference is to Sections 3223-3227, *supra*.

Sixth. A race track where horse races are held, the buildings, seats for spectators, judges' stands, paddocks, stables and other buildings and structures usually existing at such places do not constitute a nuisance or place for-

bidden by law to be maintained. Neither is horse racing a violation of law. When a bet or wager of money or other thing of value is made on a race such act constitutes a misdemeanor under Section 5514, which declares the act to be "gambling" and provides for its punishment.

Seventh. To construe the statute to authorize a Court of Equity to enjoin the commission of acts which are criminal and punishable as such upon the ground that the person so guilty is a "nuisance" is to ignore the meaning of the word "nuisance" and to misapply the law applicable to that subject. The theory upon which a Court of Equity abates a "nuisance" is that property is held under the implied obligation that the owner's use of it shall not be injurious to the community; that the jurisdiction will be exercised sparingly, reluctantly and with great caution and only in extreme cases; that before granting equitable relief even in a proper case of "nuisance" before the complaining party resorts to a Court of law, the case must be clear, free from all substantial doubt as to the right to relief, and a strong mischievous case of pressing necessity must exist. See Boston Beer Co. v. Massachusetts, 97 U. S. 32; 24 L. Ed. 989; Mugler v. Kansas, *supra;* Charlisle v. Cooper, 21 N. J. Eq. 576, 29 Cyc. 1221; Flcod v. Consumers Company, 105 Ill. App. 559; Nelson v. Milligan, 151 Ill. 462, 38 N. E. Rep. 239; Simpson v. Justice, 8 Iredell's Eq. (N. C.) 115.

Eight. The statutes invoked in this case deal only with the usual procedure for the abatement of a public nuisance which is an unlawful use of one's own property in such way as to cause *material* annoyance, discomfort or hurt to the public. A public nuisance affects the rights enjoyed by citizens as part of the public; the right to which every citizen is entitled. A private nuisance is anything done to the hurt, annoyance or detriment of the lands, tenements

or hereditaments of another and not amounting to a trespass. 29 Cyc. 1152.

A public nuisance does not furnish grounds for an action either at law or equity by an individual who merely suffers an injury which is common to the general publc. 29 Cyc. 1208; Lutterloh v. Ceder Keys, 15 Fla. 306.

Where an adequate remedy may be had by resorting to a criminal prosecution an injunction will not be granted. Sparhawk v. Union Passenger Railway Co., 54 Pa. St. 401.

When the matter complained of is not clearly a nuisance against which the complainant is entitled to relief by abatement or injuction a Court of Equity will not interfere until the right and the existence of the nuisance have been established at law or by verdict of a jury. Shivery v. Streeper, 24 Fla. 103, 3 South. Rep. 865; Bell v. Ohio and Pennsylvania Ry. Co., 25 Pa. St. 161, 64 Am. Dec. 687.

Ninth. If the statute is construed to mean that a person may be enjoined by a Court of Equity from committing the crime of "gambling or "maintaining a place for the purpose of gambling" its validity would be in grave doubt as an attempt to deprive a person charged with crime of the right of trial by jury. A statute should not be construed as to make it operate in violation of the Constitution but on the other hand when it is possible to do so it should become so as to preserve constitutional rights and not destroy them. Statutes should be construed so as to avoid grave doubts upon that score. Burr v. Florida East Coast R. Co., 77 Fla. 259, 81 South. Rep. 464; *In re* Seven Barrels of Wine, 79 Fla. 1, 83 South. Rep. 627.

Tenth. Proceedings to abate a public "nuisance" may be maintained only in the name of the State, upon the relation of some officer, usually the Attorney General or some prosecuting officer. The reason for this rule and that which denies to any private citizen the right to maintain the action is to avoid a multiplicity of suits. If the

majority opinion is correct then any citizen may bring an action for the same offense and the wise rule against multiplicity of suits and subjecting a person to annoying litigation unnecessarily is violated by the statute. On the other hand if the State as a party is precluded from maintaining more than one action upon the same cause her Attorney General, County Solicitor, or State Attorney may be forestalled in the performance of their duty by some active and alert citizen who first preempts the State's name and binds it to an adjudication upon the case made by him. In such way both the criminal procedure and equitable relief may be frustrated and turned to no purpose because the judgment of the Court in the equitable proceeding is binding upon both parties and may on the one hand prevent a successful prosecution of the crime or on the other deprive the person charged of the right of jury trial.

BUFORD, J., Dissenting:

In this case Mr. Chief Justice ELLIS has prepared to be filed herein a statement of the grounds upon which he dissents from the majority opinion. The grounds as stated by Mr. Chief Justice ELLIS are numbered by him from First to Tenth, inclusive.

I concur in the views expressed by Mr. Chief Justice Ellis as set forth in the sub-divisions of his statement marked Second, Third, Fifth, Sixth, Seventh, Eight, Ninth and, Tenth and therefore, must dissent from the majority opinion.