## STATE v. NEWS-JOURNAL CORPORATION.
Docket 64, Page 2438.

County Judge's Court, Volusia County.

February 14, 1972.

James Gibson, County Prosecutor, DeLand, for the state.

Samuel P. Bell, III, of Cobb, Cole, Sigerson, McCoy, Bell & Bond, Daytona Beach, for the defendant.

ROBERT DURDEN, County Judge.

This cause came on to be heard on defendant's motion to dismiss on January 21, 1972. At said hearing, the court received a stipulated statement of facts and heard argument by the Volusia County Prosecutor and counsel for defendant.

### Stipulated facts

The News-Journal Corporation is a Florida Corporation which publishes the Daytona Beach Morning Journal, a daily newspaper published in Volusia County. On September 29, 1971, there was published in the Daytona Beach Morning Journal a political article written by the News-Journal political editor, Ray Ruester, entitled *Kane's City Hall Power Grab*. The subject of the article was the incumbent mayor, Richard Kane, and his alleged attempts to create a strong mayor government for the city which, by charter, has a commission manager form of government.

By a letter dated September 29, 1971, addressed to the editor, News-Journal Corporation, Richard Kane requested that pursuant to §104.38, Florida Statutes, the News-Journal Corporation immediately publish a reply to the column. The material which Mayor Kane sought to have published as his reply was attached to his letter to the editor and consisted of an article written by Richard Kane and previously published in the Halifax Reporter, a newspaper published in Volusia County, on September 4, 1971.

The News-Journal Corporation refused to publish the material as requested. Mayor Kane thereafter signed an affidavit and caused a warrant to be issued for the News-Journal Corporation for violation of §104.38, Florida Statutes.

The News-Journal Corporation filed its motion to dismiss contending, inter alia, that §104.38 is unconstitutional under article 1, §4, of the constitution of Florida, and the first and fourteenth amendments to the constitution of the United States.

### Decision

§104.38, Florida Statutes, provides as follows —

If any newspaper in its columns assails the personal character of any candidate for nomination or for election in any election, or charges said candidate with malfeasance or misfeasance in office, or otherwise attacks his official record, or gives to another free space for such purpose, such

newspaper shall upon request of such candidate immediately publish free of costs any reply he may make thereto in as conspicuous a place and in the same kind of type as the matter that calls for such reply, provided such reply does not take up more space than the matter replied to. Any person or firm failing to comply with the provisions of this section shall, upon conviction, be guilty of a misdemeanor.

The defendant in its motion to dismiss contends that the above-quoted statute is unconstitutional. This court agrees with the defendant for the reasons as stated herein.

First, this court recognizes that the intent of the above-quoted statute is to regulate the press which is protected by the first amendment to the United States Constitution and article 1, §4, of the Florida Constitution. The cases limiting restraint of the free press are numerous. The case of the New York Times Company v. Sullivan, 376 U.S. 254 (1964), is recognized as one of the landmark decisions in dealing with the question of freedom of the press. Mr. Justice Brennan, rendering the opinion of the court in that case, stated —

> The general proposition that freedom of expression upon public questions is secured by the First Amendment has long been settled by our decisions. The constitutional safeguard we have said, "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." Roth v. United States, 354 U.S. 476, 484, 1 L.ed. 2d 1498, 1506, 77 S.Ct. 1304. The maintenance of the opportunity for free political discussion to the end that government may be responsive to the will of the people and that changes may be obtained by lawful means, an opportunity essential to the security of the republic, is a fundamental principle of the constitutional system.

Applying the rule of law as set forth therein it is the opinion of this court that the statute in question imposes an unconstitutional infringement upon the freedom of the press.

Second, it should be recognized that the statute in question is a criminal statute, the violation of which is punishable by fine or imprisonment. It is a well settled rule of law of this state, and of all other states, that a criminal statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. Cramp v. Board of Public Instruction of Orange County, Florida, 368 U.S. 278; Aztec Motel, Inc. v. State, ex rel. Faircloth, 251 So.2d 849 (Florida Supreme Court, 1971) ; Burstyn, Inc. v. Wilson, 343 U.S. 495 (1951).

This court is of the opinion that the language of the statute in question is too vague, indefinite and uncertain to constitute notice of what language may fall within the purview of the statute and what constitutes a reply which must be printed at the request of candidates. This court is of the opinion that this statute is not reasonably definite and certain and that the constitutional requirement of definiteness is violated in that this statute fails to give a person of ordinary intelligence fair notice of its violation.

Moreover, it is the opinion of this court that the requirement of statutory definiteness must be even more strictly enforced where First Amendment freedoms are involved. Ashton v. Kentucky, 384 U.S. 195; Scull v. Commonwealth of Virginia, 359 U.S. 344, NAACP v. Button, 371 U. S. 415. In the *Button* case the United States Supreme Court stated —

> Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity . . . The objectionable quality of vagueness and over-breadth does not depend upon absence of fair notice to a criminally accused or upon unchanneled delegation of legislative powers, but upon the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application . . . These freedoms are delicate and vulnerable, as well as supremely precious in our society. The threat of sanctions may deter their exercise almost as potently as the actual application of sanctions.

In the opinion of this court, it takes little imagination to foresee the susceptibility of "sweeping and improper application" of the statute in question.

In declaring §104.38, Florida Statutes, to be unconstitutional, this court is not unmindful of the fairness doctrine as it is applied to radio and television through the regulations of the Federal Communications Commission. However, this court recognizes the distinction between the limited airwaves, which constitute a part of the public domain, and newspapers. Redlion Broadcasting Company v. FCC, 395 U.S. 367 (1969); Yablonski v. United Mine Workers of America, 305 Fed. Supp. 868 (1969).

This is not to say that this court, by declaring this statute unconstitutional, condones the unbridled use of the press for character assassination of public officials. This court would urge the Florida legislature to consider the passage of proper legislation, keeping in mind the constitutional prohibitions against infringement upon the free press, which would encourage responsible news coverage and discourage the irresponsible use of the press for personal attacks upon the character of public officials.

Based on the foregoing, §104.38, Florida Statutes, is declared to be unconstitutional and, for that reason the charges placed against the defendant pursuant to the terms of said statute are dismissed.