## TORNILLO v. MIAMI HERALD PUBLISHING CO.
No. 72-20199.

Circuit Court, Dade County.

October 20, 1972.

Tobias Simon, Miami, for the plaintiff.

Dan Paul of Paul & Thomson, Miami, for the defendant.

FRANCIS J. CHRISTIE, Circuit Judge.

*Final judgment:* Plaintiff, a candidate for the state legislature, demanded that the Miami Herald print verbatim his replies to two editorials in the Herald relating to his candidacy for public office. The Herald refused.

Plaintiff then brought this action for a mandatory injunction and for damages seeking to enforce §104.38, Florida Statutes, by a civil action. The editorials and plaintiff's replies are attached to the complaint. In view of the nature of the relief requested the court granted plaintiff's request for an emergency hearing on October 2, 1972.

Pursuant to §86.091, Florida Statutes, the attorney general was advised that the defendant intended to ask the court for a declaration that §104.38 was unconstitutional. The attorney general was served with a copy of the complaint and was represented at the hearing.

§104.38 is a criminal statute. Absent special circumstances equity will not enjoin the commission of a crime. Pompano Horse Club

Co. v. State (1927), 93 Fla. 415, 111 So. 801, 52 A.L.R. 51; 17 Florida Jurisprudence, *Injunctions,* §46.

However, there is a more serious infirmity in plaintiff's case. The court is of the opinion that §104.38 violates Article I, §§4 and 9 of the Florida Constitution and the Fourteenth Amendment to the U. S. Constitution.

This question was considered in State v. News-Journal Corporation, 36 Fla. Supp. 164, a case filed in the county judge's court of Volusia County, Florida. In a carefully reasoned opinion dated February 14, 1972, Judge J. Robert Durden held §104.38 unconstitutional on two grounds — an infringement upon freedom of the press, and a denial of due process of law because the statute is too vague, indefinite and uncertain to constitute notice of what language may fall within its purview and what constitutes a reply which must be printed. The attorney general advised the court that he had elected not to appeal Judge Durden's decision on the ground that he also had the same reservations about the constitutionality of the statute.

This court concurs in Judge Durden's opinion. State statutes prohibiting or directing any type of publication, particularly upon pain of criminal sanction, are presumed unconstitutional unless it can be demonstrated that the infringement can be justified as required to protect a substantial public interest threatened by a clear and present danger. Near v. Minnesota, 283 U.S. 697 (1931); Thomas v. Collins, 323 U.S. 516, 530 (1945); Palko v. Connecticut, 302 U.S. 319, 327 (1937). The "priority" given First Amendment freedoms "gives these liberties a sanctity and a sanction not permitting dubious intrusions." Thomas v. Collins, supra at page 530. "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." N.A.A.C.P. v. Button, 371 U.S. 415, 433 (1963). The First Amendment prohibits the government from restraining the publication even of top secret documents alleged to be vital to the national security. New York Times Co. v. United States, 403 U.S. 713 (1971).

Clearly if the state may not prohibit what a newspaper may print it cannot assume the editorial function and direct a newspaper what to print. By the First Amendment, "The Government's power to censor the press was abolished so that the press would remain forever free to censure the Government. The press was protected so that it could bare the secrets of government and inform the people. Only a free and unrestrained press can effectively expose

deception in government." New York Times Co. v. United States, supra at page 717 (Justice Black concurring) (1971).

Since §104.38, Florida Statutes, so clearly reaches cases in which its restraint upon freedom of speech and press does not measure up to any permissible First Amendment standard the statute is void on its face.

Because of its broad intrusion into the area protected by the First Amendment, §104.38 also suffers from an additional infirmity — it is impermissibly vague and indefinite and this vagueness serves to restrict and stifle protected expression. No editor could know from the statute exactly what words would offend the statute or the scope of the reply intended to be mandated. A state may not enact such a broad statute and leave it to the courts, on a case by case basis, to determine the constitutionality of its application to various circumstances. To do so places a citizen in an untenable position of foregoing his protected liberties, or risking criminal prosecution. This dilemma itself impermissibly restricts free expression. Smith v. Cahoon, 283 U.S. 564 (1931).

> "Vague laws in any area suffer a constitutional infirmity. When First Amendment rights are involved, we look even more closely lest, under the guise of regulating conduct that is reachable by the police power, freedom of speech or of the press suffer." Ashton v. Kentucky, 384 U.S. 195, 200 (1966).

The strict standards of overbreadth and vagueness in First Amendment cases are even stricter where a statute provides criminal sanctions. "The standard for certainty in statutes punishing for offenses is higher than in those depending primarily upon civil sanctions for enforcement." Winters v. New York, supra at page 515.

The attorney general advised the court at the hearing that his opinion as to the unconstitutionality of this statute had not changed since State v. News-Journal Corporation, supra, and therefore he did not elect to intervene to defend the statute.

Plaintiff stated that if the court found the statute on which this suit is based unconstitutional he did not desire to take further proceedings in this court and requested that his suit be dismissed with prejudice.

Accordingly, confirming the court's oral ruling made at the conclusion of the hearing, this cause is dismissed with prejudice at plaintiff's cost.